MILLER, APPELLANT, *v.* SHELBY MUTUAL INSURANCE CO., APPELLEE.

[Cite as Miller v. Shelby Mutl. Ins. Co., 20 Ohio App. 2d 323.]

(No. 4889—Decided December 16, 1969.)

*Messrs. Green, Schiavoni, Murphy & Stevens,* for appellant.

*Messrs. Pfau, Comstock & Springer,* for appellee.

JOHNSON, J. On June 2, 1966, appellee, Shelby Mutual Insurance Company, issued its Special Automobile Insurance policy to the appellant's father as the named insured.

By the terms of the policy uninsured motorists coverage extends to all relatives of the insured, who reside in the household and do not own a private passenger automobile.

In April 1966, appellant purchased, and received a certificate of title to, a 1956 Chevrolet. At the time of purchase the car had an inoperable blownout engine. After purchase, it was towed to the home of appellant's father. In July 1966, it was towed to the home of Oliver Randall, a friend of the appellant, for the purpose of repair. The car was located at the Randall home on August 27, 1966, when appellant incurred bodily injuries as the result of the negligence of an uninsured motorist.

A claim filed with appellee was subsequently denied for the reason that appellant, though a resident of his father's household, was the owner of the 1956 Chevrolet which constituted a private passenger automobile as defined in the policy.

An action for declaratory judgment was instituted, and the cause was submitted on an agreed statement of facts, in which the above facts were admitted to be true.

It was argued by the parties that ''the sole question to be resolved by the court is: 'was the plaintiff at the time of the collision covered by uninsured motorist protection as an insured within the meaning of the policy?' '' The trial court said ''no.''

''Automobile,'' under the terms of the policy, is defined as a ''four wheel land motor vehicle designed for use principally upon public roads.''

That appellant was an owner cannot be questioned. Upon purchase, he received a certificate of title, in accordance with Section 4505.03, Revised Code, to the 1956 Chevrolet.

That appellant considered this vehicle an "automobile" is apparent from the fact that he intended to use the car after repairing it.

Appellant's position is that under the terms of the policy of insurance the ownership of an automobile by a resident of the household should be construed to mean the ownership of an *operable* automobile.

It has long been held in Ohio that in cases of ambiguity the ambiguity should be construed strictly against the insurer. See *Travelers Ins. Co.* v. *Buckeye Union Casualty Co.*, 172 Ohio St. 507; *Travelers Ins. Co.* v. *Auto-Owners Ins. Co.*, 1 Ohio App. 2d 65.

As a rule of construction, however, it should be applied, as intended, *in those instances of ambiguity.*

We see no ambiguity in the terms of the subject policy relating to the definition of an automobile owned by a resident of a household.

The Supreme Court of Ohio in *Yeager* v. *Pacific Mutl. Life Ins. Co.*, 166 Ohio St. 71, said in the second paragraph of the syllabus:

"An insurance policy constitutes a contract, its terms must be given a reasonable construction, and an *ambiguity which is created* by giving a strained or unnatural meaning to phrases or by mere casuistry does not constitute an ambiguity requiring construction." (Emphasis added.)

Appellant relies upon *Civil Service Employees Ins. Co.* v. *Wilson*, 222 Cal. App. 2d 519, 35 Cal. Rep. 304, as authority for his position. We do not find the facts of that case to be *in pari materia* with the subject case.

In another California case, *Williams* v. *Standard Accident Ins. Co.*, 158 Cal. App. 2d 506, 322 P. 2d 1026, Weishaar acquired an inoperable Chevrolet with no wheels, tires or windshield which he intended to rebuild. The car was registered in his name. The California court, in *Wilson*, distinguished the *Williams* case on the grounds the in-

sured there intended to make the car operable by repairing same, and that the car was registered. The *Williams* court denied coverage under a policy whose terms were similar to the one under consideration.

Appellant advances no other authority, and in our research we have found none.

To construe the policy as appellant urges would, in our opinion, create an ambiguity which is not present under its terms.

The judgment of trial court is affirmed.

*Judgment affirmed.*

O'NEILL, J., concurs.

LYNCH, P. J., dissenting. The facts in this case are undisputed; but the facts raise a question of what principle of law is applicable to these facts. In my opinion, the facts are such that there can be an honest difference of opinion as to the applicable law in this case. Although I arrive at a different conclusion than that of the majority, I recognize that the majority opinion is supported by good logic and reasoning.

I agree with the majority opinion that this is not a case of construction of an ambiguous insurance contract. In my opinion, the issue is whether the definition of an automobile in the insurance policy as a "four wheel land motor vehicle designed for use principally upon public roads" means an automobile that is inoperable because of a blowout, inoperable engine. I believe that the applicable law is expressed in 30 Ohio Jurisprudence 2d 221, Insurance, Section 210, as follows:

"Contracts of insurance, the same as other contracts, must receive a reasonable and fair interpretation consonant with the apparent object and intent of the parties as expressed by the language used. * * * * "

The trial court held that at the time of the collision, the plaintiff was not covered by the uninsured motorist protection as an insured within the meaning of the policy, without any explanation of how it arrived at this decision.

In my opinion, there is a difference in the legal ef-

fect between an automobile temporarily inoperable because of motor trouble that can be repaired with reasonable cost and effort and an inoperable automobile with such damage to the motor that it could not be repaired with reasonable cost and effort. There is nothing in either the trial court's decision or in the majority opinion to indicate that any consideration was given to whether the 1956 Chevrolet was temporarily inoperable or permanently inoperable at the time plaintiff was injured. I recognize that there is no clear-cut legal authority either to support or dispute this distinction, but I believe that there is a difference between the legal effect of whether the 1956 Chevrolet was temporarily inoperable or permanently inoperable at the time plaintiff was injured.

The essence of a motor vehicle is that it is self-propelled. If an automobile is no longer capable of self-propulsion, it is still a vehicle, because it can be pulled or pushed, but it is no longer a motor vehicle because it is incapable of self-propulsion.

To illustrate the point I am making, assume that the motor had been removed from the 1956 Chevrolet with no intention to replace it, would this automobile still be a "motor vehicle" within the terms of this policy? In my opinion, it would not. If there was no motor in the automobile, it could not operate upon public roads and could, in no conceivable way, increase the risk of the insurance policy at issue.

If this is so, is there a difference in the legal result if the 1956 Chevrolet has a motor in it but it is inoperable with such damage that it could not be repaired with reasonable cost and effort? Such an automobile could not operate upon public roads and could, in no conceivable way, increase the risk of the insurance policy at issue. In my opinion, there is no difference in the legal result, and, therefore, such an automobile is not a motor vehicle within the terms of this policy.

However, there is the factual issue in this case as to whether the 1956 Chevrolet was temporarily inoperable or permanently inoperable. The 1956 Chevrolet was inoperable from the time it was purchased to the time of the ac-

cident when plaintiff was injured. Plaintiff had obtained an Ohio certificate of title to the automobile, but prior to the accident had never obtained license tags for such automobile and had never driven this automobile. Plaintiff bought this automobile for the purpose of fixing it up, had worked on it prior to the accident but had been unable to get it started; and, subsequently, approximately five months after the accident, plaintiff tried to drive the 1956 Chevrolet to work but it quit on the road. It was never driven again and was sold for junk.

Under the facts of this case I recognize that the trial court and the majority of this court could arrive at their decisions even though they recognize the legal distinction between a temporarily and a permanently inoperable motor vehicle.

I had some difficulty in determining whether the 1956 Chevrolet was permanently inoperable when plaintiff was injured, within the terms of the policy. Since this case was submitted on stipulated facts, the trial court determined as a matter of law the legal effect of the stipulated facts. I disagree with the decision of the trial court. I am not sure whether, under the circumstances, my dissent is based on an erroneous application of the law or because the decision of the trial court is against the weight of the evidence. I am inclined to think it is on the basis of an erroneous application of the law.

Section 3937.18, Revised Code, makes it mandatory that insurance companies issuing automobile liability policies include uninsured motorist coverage. Thus, the public policy of Ohio is to recognize the need of such coverage and to encourage such coverage by enabling every person in Ohio to obtain such coverage. Under the facts of this situation, I feel that the father of plaintiff reasonably believed that he had this coverage for his son and that most reasonable fathers would arrive at the same conclusion.

Therefore, it is my conclusion that plaintiff was covered by the uninsured motorist coverage of his father's insurance policy at the time he was injured, by a reasonable interpretation of the language of this insurance policy under the facts in this case.