CITIZENS BANK OF MICHIGAN CITY, Indiana, Plaintiff-Appellant,

v.

Christine HANSOM, W. Wesley Thode and Marjorie L. Thode, LaPorte Savings Bank, Zygmunt Lorence and Jack Lockridge, Defendants-Appellees.

No. 3–385A71.

Court of Appeals of Indiana, Third District.

Sept. 16, 1986.

Patrick E. Donoghue, Sweeney, Dabagia, Donoghue & Thorne, Michigan City, for plaintiff-appellant.

Gene M. Jones, Mark A. Lienhoop, Newby, Lewis, Kaminski & Jones, LaPorte, for defendants-appellees Thodes and LaPorte Sav. Bank.

Arthur L. Roule, Jr., Raelson, Osborn, Roule, Baugher & Hedge, LaPorte, for defendant-appellee Lorence.

GARRARD, Judge.

On July 27, 1974 Christine Hansom and John J. Hansom (Hansom) bought a Sequoia doublewide sectional home (the home). Shortly thereafter it was delivered on two flatbed semi-trucks to a property Hansom rented. Citizens Bank of Michigan City (Citizens) claimed a purchase money security interest in the home. A certificate of title was issued for the home. Citizens' security interest was noted on the certificate, and they retained control of it.

In February of 1975 John Hansom died, leaving his wife the sole owner of the home. This was an act of default under the security agreement. Hansom made no further payments.

In June of 1975 Hansom bought the property on which the home sat. During the same year, a foundation for the home was built, a basement was excavated under part of it, and an entryway was built.

In March of 1977 Hansom sold the home and the land upon which it sat to Wesley and Marjorie Thode (Thode), a purchase which was financed by LaPorte Savings Bank (LaPorte Savings). A title search was made in the real estate and UCC records. Since Citizens' security interest was merely noted on the home's certificate of title, this search revealed no liens.

On November 26, 1980 Citizens filed suit seeking damages from Hansom and possession of the home.

On June 20, 1981 the Thodes entered into a contract to sell the home to Zygmunt Lorence (Lorence).

Other facts will appear in the body of this opinion.

After a full trial on the merits, the trial court entered judgment against Hansom for $9,295.47. However, it found that Citizens' security interest was unperfected,

that the home had become a fixture, that the Thodes were *bona fide* purchasers for value, and that LaPorte Savings and Lorence took their interests free from Citizens' security interest. Thus, it refused to give Citizens possession of the home.

Citizens presents four issues to this court:

I. Did the trial court err in determining that Citizens' security interest was not properly perfected?

II. Did the trial court err when it found that the home was a fixture?

III. Are the Thodes *bona fide* purchasers without notice of Citizens' security interest?

IV. Is Citizens' interest in the property superior to the Thodes' grantees?

We affirm.

### I.

Did the trial court err in determining that Citizens' security interest was not properly perfected?

Under the Indiana Uniform Commercial Code, IC 26–1–9–302 [1] (Burns 1974):

"(3) The filing provisions of this article [chapter] do not apply to a security interest in property subject to a statute

\* \* \* \* \* \*

(b) of this state which provides for central filing of security interests in such property, or in a motor vehicle which is not inventory held for sale for which a certificate of title is required under the statutes of this state if a notation of such a security interest can be indicated by a public official on a certificate or a duplicate thereof."

At the time the home was delivered, the motor vehicle code made it "unlawful for any person to operate upon the public highways, a motor vehicle, semitrailer or house car, under an Indiana registration number, unless a certificate of title shall have been issued as herein provided.' IC 9–1–2–1 (Burns 1974). Since the Bureau of Motor Vehicles maintains a central registry of

security interests, or because a certificate of title had been issued for the home, and Citizens' interest had been noted on the title, Citizens concludes that it need not have filed to perfect its lien.

Citizens misreads the UCC. The question under the first clause of IC 26–1–9–302(3)(b) is not whether there is a central registry for such security interests, but whether there is an Indiana statute providing for the central filing of security interests in the property. Citizens has referred us to no such law, but merely alludes to the existence of a registry. Our research has not discovered such a statute. The Indiana Comment to the UCC says that Indiana has no such laws. IC 26–1–9–302 comment (Burns 1974).

The second clause of IC 26–1–9–302(3)(b) (Burns 1974) provides for security interests in certain motor vehicles for which a certificate of title is required. Since the UCC does not define "motor vehicle," we look to ordinary usage to determine if the property involved here is a motor vehicle.

Reason would seem to indicate that something without engine, motor, wheels or axles is not a motor vehicle. The motor vehicle code supports this conclusion. It defines "vehicle" as "Every device in, upon, or by which any person or property is, or may be, transported or drawn upon a public highway." IC 9–1–1–2(a) (Burns 1974). "Motor vehicle" is defined as "Every vehicle, as herein defined, which is self propelled...." IC 9–1–1–2(b) (Burns 1974).

■ Since the home was not self propelled it was not a motor vehicle under the motor vehicle code.

Since it was not a motor vehicle, the second clause of IC 26–1–9–302(3)(b) (Burns 1974) does not apply. Further, as shall be developed in part III of this opinion, the home did not require a certificate of title.

Notwithstanding this, Citizens appears to argue that since the Bureau of Motor Vehicles issued a certificate, it is protected. The second clause of IC 26–1–9–302(3)(b)

1. The statute has been amended effective January 1, 1986.

(Burns 1974) does not apply simply to any property for which a certificate of title has been issued, but only to motor vehicles. Since this home was not a motor vehicle, Citizens' argument fails.

## II.

Did the trial court err when it found that the home was a fixture?

■ Citizens initially argues that the trial court erred in allowing a mobile home to be converted from goods into a fixture. Article 9 requires no such conversion. According to IC 26–1–9–105(f) (Burns 1974) " 'Goods' includes all things which are movable at the time the security interest attaches *or which are fixtures....*" (Emphasis added). Thus, for the purposes of Article 9, fixtures are a subclass of goods.

The parties do not dispute that at the time Citizens' security interest attached the mobile home was goods, since it was movable.

■ Under the UCC a person holding a security interest in property which attached before the property became a fixture takes priority over most persons with an interest in the real estate. IC 26–1–9–313(2) (Burns 1974). The secured party does not take priority over *bona fide* purchasers for value of the real estate. IC 26–1–9–313(4)(a) (Burns 1974).

The UCC does not define fixtures. One looks to the general law of this state to determine if the home became a fixture.

Indiana uses a three part test to determine if personal property has become so identified with real property as to be a fixture. According to the Supreme Court, one must ask:

1) Was the property annexed to the land;

2) Has the property been adapted to the use of the land;

3) Was there an intent that the property become a fixture?

*Citizens Bank v. Mergenthaler Linotype Co.* (1940), 216 Ind. 573, 25 N.E.2d 444.

■ It is the third part of the test which is controlling. If there is doubt as to intent, the property should be regarded as personal.

Here, the trial court's findings and the evidence reveal a substantial basis from which the trial court could find that Hansom intended the home to be a fixture. The trial court found that Hansom owns the land on which the home sits, that it is 24' × 60', has had a basement excavated from underneath half of it, and has been placed on a foundation. There was evidence that removing the home would substantially damage other improvements that had been made.

■ From this, the court could rationally have found that by placing the home on a foundation and digging a basement underneath it, the home was annexed to the land and that there was no doubt that Hansom intended it to become a fixture. Since this court does not reweigh the evidence, we cannot overturn this determination.

■ Citizens urges that the legislature did not intend mobile homes to be treated as fixtures. As it points out, the tax code provides that "mobile homes" are to be levied upon as personal property. IC 6–1.–1–7–9 (West 1982). Even assuming that the home was still a "mobile home" within the meaning of the tax code,[2] Citizens' argument fails. An intent to withdraw mobile homes from the ordinary operation of the law of property cannot be inferred simply from a legislative decision to treat them as personalty in a limited situation.

Citizens also refers us to *Clackamas County v. Dunham* (1978), 282 Or. 419, 579 P.2d 223 for the proposition that the trial court should not have found that the home was a fixture. The law of property was not involved in that case. At issue was the construction of the term "designed in such a manner that it may be moved

2. It may no longer have been transportable within the meaning of the tax code. *See* IC 6–1.1–7–1(b)(2).

from one location to another" as it applied to a doublewide mobile home. Such construction problems do not face us now. Thus, the case does not support Citizens.

Given that there was substantial evidence that the property was annexed and adapted to the use of the land, and that there was an intent to make it a permanent part of the freehold, we find no error.

### III.

Are the Thodes *bona fide* purchasers without notice of Citizens' security interest?

When the Thodes bought the home they did so without having seen it. Nonetheless, they have constructive notice of such things as they would have learned had they visited the property. From this, Citizens concludes that had the home been viewed, the Thodes would have learned that it was a mobile home and thus would have had a duty to learn the state of the "title."

From the structure of the argument, it can be inferred that the title Citizens believes that Thode had a duty to inquire into is not the actual ownership of the vehicle, but the document of title issued by the Department of Motor Vehicles. From its conclusion that a reasonable person who knew that the home was a mobile home would ask to see the document of title, it is apparent that Citizens assumes that documents of title are required for mobile homes.

The argument fails.

In Indiana, a certificate of title is not automatically required for mobile homes.[3] This state requires that vehicles have a certificate of title in order to be licensed to use the public roads.

The record indicates that when this "house car" was delivered in the summer of 1974 it had neither wheels nor axles but was transported in two sections on flatbed semi-trailers, and that it had not been moved between its installation and the sale to the Thodes in the spring of 1977. Although Citizens and the manufacturer chose to call it a "house car," it was not one within the language of the statute. There was no legal necessity for the home to have either registration plates or a certificate of title. Thus, the Thodes are not on constructive notice of a lien noted on the certificate.

### IV.

Is Citizens' interest in the property superior to the Thodes' grantees?

Citizens has failed to show that the Thodes had actual or constructive notice of their lien, and so the Thodes qualify as *bona fide* purchasers. Since the Thodes are *bona fide* purchasers, those taking from them take clear of a pre-existing lien, even though they had notice of the interest claimed. *Buck v. Foster* (1897), 147 Ind. 530, 46 N.E. 920. Since LaPorte Savings Bank and Lorence take their interests from the Thodes, their interests are superior to Citizens'.

For the reasons discussed, the trial court's decision is affirmed in all respects.

Affirmed.

STATON, P.J., and HOFFMAN, J., concur.

---

3. The home was registered as a house car. At the time in question, "house car" was defined by IC 9–1–1–2(t) as:

"Every vehicle with or without motive power equipped exclusively for living quarters for persons traveling upon the highways."