**ERIE INSURANCE COMPANY, Appellant–Plaintiff,**

v.

**Lillie ADAMS, Eddie Greggs and Thomas Hinkle, Appellees–Defendants.**

No. 49A02–9501–CV–9.

Court of Appeals of Indiana.

Jan. 16, 1997.

Robert A. Smith, R. Troy Mulder, William F. McManus, Indianapolis, for Appellant–Plaintiff.

Lance Wittry, Indianapolis, for Appellees–Defendants.

**OPINION**

SULLIVAN, Judge.

Erie Insurance Group (Erie) appeals the trial court's September 14, 1994 order in Erie's declaratory judgment action, granting

---

summary judgment in favor of Thomas Hinkle (Hinkle).

We affirm.

The sole issue before this court is whether or not the trial court erred in granting summary judgment on behalf of Hinkle, thus determining that a homeowner's policy issued by Erie to Lillie Adams (Adams) provided coverage for a bodily injury claim brought by Hinkle against Adams' grandson, Eddie Greggs (Greggs), who resides in Adams' home.

The facts of this case, which are largely undisputed are as follows. On October 31, 1992, Hinkle and Greggs were working on Greggs' 1964 El Camino at Adams' residence. They were drilling a hole in a strip of metal procured at Greggs' place of employment. It was to be used as a gas tank strap in order to attach the gas tank to the frame of the El Camino. As Greggs, using a power drill, drilled the hole in the strap, the metal coiled and severed Hinkle's thumb, who was assisting Greggs.

The El Camino on which Hinkle and Greggs were working was not a fully functioning vehicle. It did not have a body on it. It had no seats, no brakes, and no engine. Greggs described the vehicle as wheels and a frame. It was clearly not operable.

Greggs had purchased the El Camino in November of 1991. He drove it home and to work for approximately two weeks. It ran when he bought it, but subsequently the transmission failed, and he parked it at Adams' residence, where he lived. He then began a process of restoring the vehicle. He took out the engine, gave it away, and stripped the vehicle down to its frame. He had the frame sandblasted and added the wheels, which was the vehicle's state at the time of the accident.

After the accident, Hinkle filed suit against Greggs claiming that Greggs was negligent. The present declaratory judgment action is based upon the homeowner's policy which Erie issued to Adams. Erie concedes that Greggs is covered for personal liability under Adams' policy; however, Erie claims that the policy's exclusions deny coverage for Hinkle's

injury under the present facts. The relevant part of the exclusion section at issue reads:

### WHAT WE DO NOT COVER—EXCLUSIONS

Under *Personal Liability Coverage* and *Medical Payments To Others Coverage* we do not cover:

. . . .

(6) **Bodily injury** or **property damage** arising out of the ownership, maintenance or use of:

. . . .

(b) any land motor vehicle owned or operated by or rented or loaned to **anyone we protect.**

We do cover motor vehicles if:

1. used exclusively at an **insured location** and not subject to motor vehicle registration; [or,]

2. kept in dead storage at an **insured location**[.]

Record at 23–24.

The trial court granted Hinkle's motion for summary judgment but did not indicate upon what grounds it did so. This court will review the trial court's entry of summary judgment following the same process as the trial court. Therefore, we will affirm the judgment if, as a matter of law, the moving party was entitled to judgment. *Goldsberry v. Grubbs* (1996) Ind.App., 672 N.E.2d 475. Hinkle contends that summary judgment was proper if it appears that one or more of the following apply:

1) The El Camino was not a land motor vehicle;

2) The accident did not "arise out" of maintenance of the El Camino;

3) The El Camino was used exclusively at Adams' residence and was not subject to motor vehicle registration; or,

4) The El Camino was in dead storage.

It is clear from the record that Judge Zore at the summary judgment hearing felt that the dispositive issue was whether or not the El Camino was a "motor vehicle". Because we hold that the vehicle in question was not a motor vehicle and therefore the granting of the summary judgment was proper, we need not address any of the other issues.

■ The interpretation of an insurance contract is a question of law for the court. *Tate v. Secura Ins.* (1992) Ind., 587 N.E.2d 665. And, language in an insurance contract which is clear and unambiguous should be given its plain and ordinary meaning. *Id.* Indiana courts have repeatedly noted that insurers are free to limit liability "in any manner not inconsistent with public policy, and an unambiguous exclusionary clause is ordinarily entitled to construction and enforcement." *Ramirez v. Am. Family Mut. Ins. Co.* (1995) Ind.App., 652 N.E.2d 511, 515. However, exceptions, limitations and exclusions must be plainly expressed in the policy. *Delaplane v. Francis* (1994) Ind.App., 636 N.E.2d 169, *trans. denied.* The exclusionary clause must clearly and unmistakably bring within its scope the particular act or omission that will bring the exclusion into play, *Asbury v. Indiana Union Mut. Ins. Co.* (1982) Ind.App., 441 N.E.2d 232, and any doubts as to the coverage shall be construed against the contract drafter. *Delaplane, supra.*

Appellant's brief cites several cases for the proposition that the injury before us is one which arose out of the maintenance of a motor vehicle. For example, in *State Farm Fire & Casualty Co. v. Salas* (1990) 222 Cal.App.3d 268, 271 Cal.Rptr. 642, the insured removed a tire and rim from his automobile for purposes of welding. During the welding, the tire exploded. The court held that the exclusionary clause of the insurance policy precluded coverage because the accident arose out of the maintenance of a motor vehicle. This court may well agree with Erie's contention that Hinkle's injuries "arose out of" his work on whatever this El Camino was, but we must first decide whether or not at the time in question it was a motor vehicle. The California court did not conclude that the tire and rim upon which the injured was working was, in fact, a motor vehicle, although the implication is that the work was being done as part of the vehicle maintenance.

The parties' briefs direct us to two sources in determining the meaning of the term motor vehicle. The dictionary defines a motor vehicle as an "automotive vehicle." Automotive, in turn, is defined as "containing within itself the means of propulsion." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 148 (1976). The Indiana Code, for purposes of traffic regulation and financial responsibility, defines a motor vehicle as "a vehicle that is self-propelled." I.C. 9–13–2–105 (Burns Code Ed. Repl.1991). Hinkle argues that an El Camino without a motor is not self propelled and cannot be. Erie points out on the other hand that a vehicle without a battery is similarly not self propelled nor can it be, without more.

Case law is also inconclusive in defining "motor vehicle". In *Citizens Bank of Michigan City v. Hansom* (1986) Ind.App., 497 N.E.2d 581, the court addressed the definition of "motor vehicle" in the context of the UCC. The item in question was a mobile home. The UCC did not define "motor vehicle"; therefore, the court looked to ordinary usage of the term. "Reason would seem to indicate that something without engine, motor, wheels or axles is not a motor vehicle." *Id.* at 583. Looking to the Indiana Code, the decision pointed out simply that "[s]ince the home was not self propelled it was not a motor vehicle under the motor vehicle code." *Id.*

We are not the first court to find itself troubled by the idea of what is and what is not a motor vehicle. The Ohio Court of Appeals faced a remarkably similar situation in *Santana v. Auto Owners Ins. Co.* (1993) Ohio App., 91 Ohio App.3d 490, 632 N.E.2d 1308, *rev. denied.* In that case the court concluded that a "1979 Trans Am, which sat idle on blocks without an engine for between eight and eleven months, did not give rise to an insurable risk and, therefore, was not an 'other-owned car'." *Id.* 632 N.E.2d at 1314 [1] In certifying the record to the Supreme Court of Ohio, the appeals court noted that its holding was in conflict with the holding of *Miller v. Shelby Mut. Ins. Co.* (1969) 20 Ohio App.2d 323, 253 N.E.2d 801. *Santana, su-*

---

1. We do note that the Ohio court was interpreting the word "car" not "motor vehicle"; however, it is clear from that court's decision that "car" was defined by that court in much the same way that the term "motor vehicle" is used here.

pra, 632 N.E.2d at 1314 (appendix) [2]. Miller held that the appellant's car which had an inoperable blown out engine was unambiguously an automobile. Miller, supra, 253 N.E.2d at 802.

The Santana case involved the term in the context of uninsured/underinsured motorist coverage, and the term was defined in accordance with the "principal purpose for such insurance." Santana, supra 632 N.E.2d at 1314 (appendix). However, that case and others are helpful in looking at the facts before us.

In Civil Service Employees Ins. Co. v. Wilson (1963) 222 Cal.App.2d 519, 35 Cal. Rptr. 304, the court determined that an old "junker" was not a "motor vehicle" because it was not self-propelled:

> Of course, it could not be reasonably be maintained that if one were to remove a battery or some incidental operating part from a car, it would cease to be an automobile. Good sense presupposes that a vehicle designed for self-propulsion on land and which may be so self-propelled or restored to that condition with reasonable cost and effort may be considered an automobile. Id. 35 Cal.Rptr. at 307.

The vehicle in question in Wilson had no starter, no generator, no seats, no dash, no "everything." The court found that there was no reasonable possibility of restoring the car to the condition of capability of self propulsion. Therefore, it was no longer an automobile.

In Harshbarger v. Meridian Mut. Ins. Co. (1974) 40 Ohio App.2d 296, 319 N.E.2d 209, the Ohio Court of Appeals determined that whether the vehicle in question was an automobile was a question of fact. The car had a defective battery, bad tires, a defective starter, a defective clutch, a defective transmission, and a cracked manifold among other ailments. The court, in reversing a summary judgment motion in favor of the insurance company, felt that the car's status as an automobile depended upon whether it was "headed for the highway or the junk pile[.]" Id. 319 N.E.2d at 211.

If, however, the car in question is in need of minor repairs, it is clearly still a motor vehicle. The Washington Supreme Court decided that a car in need of a battery and which had defective brakes and windshield wipers was an automobile within the meaning of the terms of the insurance policy. Farmers Ins. Co. of Washington v. Miller (1976) 87 Wash.2d 70, 549 P.2d 9. The court did recognize, however, that "at some stage in time a vehicle may reach such a condition that it is no longer considered an automobile for insurance policy purposes." Id. 549 P.2d at 11. There are some circumstances, such as " 'degree of disrepair or the intent of the owner' " (Id.) which indicate that the inoperability of the car is temporary, and it is still an automobile. Other circumstances may indicate that the car's state is permanent or " 'apt to be of long duration' ", and courts have tended to consider the car other than an automobile. Id. (quoting Quick v. Michigan Millers Mut. Ins. Co. (1969) 112 Ill.App.2d 314, 250 N.E.2d 819).

In Bedgood v. Hartford Acc. & Indem. Co. (1980) Fla.Dist.Ct.App., 384 So.2d 1363, a Florida court listed several pertinent questions to ask in determining whether or not something is an automobile.[3] In determining that the record made it impossible to decide whether or not a 1963 Mercury's condition was such that it was maintained for operation over the public roads, the court considered inoperability as one factor in the test. The court also took into account the length of time before the accident that the vehicle was inoperable; the extent of the vehicle's inoperability; whether or not the vehicle was placed in storage prior to its restoration; and whether the owner intended to maintain the vehicle on public streets. Id. at 1366.

Finally, in Quick v. Michigan Millers Mut. Ins. Co., supra, 250 N.E.2d at 819, the court

---

**2.** The Supreme Court of Ohio subsequently dismissed the appeal for want of conflict. Santana v. Auto–Owners Ins. Co. (1994) 69 Ohio St.3d 182, 631 N.E.2d 123.

**3.** The Florida court was determining the meaning of "automobile" in a newly acquired automobile provision. The court also pointed out that "motor vehicle" had been defined in the policy as one required to be registered and licensed under Florida law.

decided that a 1955 Chevrolet was not a private passenger automobile. The car had been considerably dismantled, the radiator was removed, the transmission was in the trunk (not the typical residence of a car's transmission), only the car's engine block remained and it could not have been repaired without an expensive procedure. *Id.* 250 N.E.2d at 820. The court stated:

> [i]n those cases, where such circumstances suggest either that the inoperable condition is probably permanent, or apt to be of long duration with little reasonable possibility of restoring the car to a condition where it can be driven on the roads, the courts have then tended to find that the vehicle is not an "automobile" within the terms of the policy. *Id.* 250 N.E.2d at 821.

The court concluded that the Chevrolet "was clearly in such condition that it could not have been made an operating private passenger automobile without incurring inordinate expense for parts and labor[,]" and that "[t]he car was not ... in such condition that it could have been driven." *Id.*

█ Ultimately this court is faced with the task of deciding whether or not Eddie Greggs' El Camino was a motor vehicle. Appellee's counsel asked the trial court to adopt a common sense approach to the definition of motor vehicle. "[W]e look to this word 'motor vehicle' a vehicle with a motor and this doesn't fit it." Record at 316. We decline to go so far as to hold that a vehicle without its motor cannot be a motor vehicle. Judge Zore noted that one could "pull" the engine in order to work on it, but the car would still be a motor vehicle.

It is clear that Greggs intended to eventually operate the El Camino again upon the public streets. However, it was not anywhere close to such operability at the time of the accident. Furthermore, the El Camino had been in storage for almost a full year before the accident occurred, the condition of the vehicle was such that one would be hard pressed to find one in a greater state of disrepair, and, most importantly, one major component of the automobile was missing and not even close to the frame—the motor. Under this limited set of facts, this court determines, as a matter of law, that Greggs' El Camino was not a motor vehicle.

It is important to note again that Erie was free to limit its insurance policy as it deemed fit. Specific language in the contract defining a motor vehicle could have foreclosed the question of coverage. However, since Erie did not see fit to include such a definition, we have been obligated to decide the case without such assistance.

The decision of the trial court in granting summary judgment in favor of Greggs is affirmed.

DARDEN and RILEY, JJ., concur.