**AMERICAN FAMILY LIFE
ASSURANCE COMPANY,
Appellant–Defendant,**

v.

**Mary RUSSELL, Appellee–Plaintiff.**

No. 84A05–9711–CV–494.

Court of Appeals of Indiana.

Oct. 26, 1998.

Craig M. McKee, Wilkinson, Goeller, Modesitt, Wilkinson & Drummy, Terre Haute, for Appellant–Defendant.

Keith L. Johnson, Johnson Simonson & Himes, Terre Haute, for Appellee–Plaintiff.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Mary Russell filed a breach of contract action against American Family Life Assurance Company ("AFLAC"), seeking benefits under an accidental death insurance policy and punitive damages. AFLAC appeals from an order of the trial court (1) denying its motion for summary judgment on Russell's breach of contract claim, and (2) entering judgment in favor of Russell. Russell cross appeals the trial court's entry of partial summary judgment in favor of AFLAC on her request for punitive damages.

We affirm.

### ISSUES

I. Whether the trial court properly denied AFLAC's motion for summary judgment and entered summary judgment in favor of Russell upon Russell's claim for accidental death benefits.

II. Whether a genuine issue of material fact exists precluding partial summary judgment on Russell's claim for punitive damages.

### STATEMENT OF THE FACTS

On June 25, 1996, at approximately 4:30 a.m., Charles Simmons was struck by a train approximately 500 feet north of 16th and Ash Streets in Terre Haute, Indiana. Apparently, no witnesses were at the scene to observe the train strike Simmons.[1]

A Terre Haute police officer arrived at the scene shortly after the accident and noticed a strong odor of an alcoholic beverage from Simmons' breath. Simmons was transported to Union Hospital where he was pronounced dead shortly after 6:00 A.M. According to the death certificate issued by the Vigo County

1. In the accident report, the conductor of the train indicated that he did not see the accident.

Health Department, the injury occurred when Simmons passed out on railroad tracks and was struck by the train.[2] Simmons' blood alcohol content was determined to be .326. The Vigo County coroner opined that the immediate cause of death as "blunt force trauma, head and chest." (R. 75). The coroner also found that acute ethanol intoxication was a condition contributing to Simmons' death.

At the time of the accident, Simmons owned an accidental death insurance policy issued by AFLAC which named his sister, Mary Russell, as the sole beneficiary. The policy provided benefits in the amount of $12,000 for accidental death arising from accidents other than common carrier and motorized vehicle accidents. The policy issued to Simmons contained the following exclusion:

> We will not pay benefits for an accident that is caused by or occurs as a result of a covered person:
>
> \* \* \* \* \*
>
> Participating in any activity or event, including the operation of a vehicle, while intoxicated (Intoxicated means that condition as defined by the law of the jurisdiction in which the accident occurred). . . .

(R. 16).

Russell filed her claim with AFLAC seeking benefits under the policy. In response, AFLAC issued a letter to Russell denying coverage based on the aforementioned exclusionary provision of the policy. Russell then instituted this action against AFLAC to recover the accidental death benefits. Russell also sought punitive damages, alleging that AFLAC's "conduct in denying her claim was in bad faith since no just cause existed to deny said claim." (R. 5).

AFLAC filed a motion for summary judgment claiming that it was entitled to judgment as a matter of law under the exclusion provision of the policy and that Russell was not entitled to punitive damages. After a hearing, the trial court denied AFLAC's

summary judgment motion and entered partial summary judgment in favor of Russell on Russell's breach of contract claim. However, the trial court entered partial summary judgment for AFLAC on Russell's claim for punitive damages. Both parties appeal.

## DECISION

### Standard of Review

■ The standard of review of a summary judgment is well-established. While the party losing in the trial court must persuade this court that the trial court's decision was erroneous, this court applies the same standard as does the trial court. *USA Life One Ins. Co. v. Nuckolls*, 682 N.E.2d 534, 537 (Ind.1997). We do not weigh the evidence designated by the parties; instead, we liberally construe the evidence in the light most favorable to the non-moving party. *Id.* Summary judgment is appropriate only if the pleadings and evidence show both the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Butler v. City of Indianapolis*, 668 N.E.2d 1227, 1228 (Ind.1996). Where material facts conflict, or undisputed facts lead to conflicting material inferences, summary judgment is inappropriate. *Id.*

### I. American Family's Appeal—Accidental Death Policy Benefits

AFLAC contends that the undisputed facts preclude Russell from receiving any benefits under the accidental death benefits policy owned by Simmons, and, therefore, the trial court erred by denying AFLAC's motion for summary judgment and entering partial summary judgment for Russell. Specifically, AFLAC contends that because it is undisputed that Simmons was intoxicated at the time of his death, his death falls within the plain language of the policy exclusion, which provides in pertinent part:

> We will not pay benefits for an accident that is caused by or occurs as a result of a covered person:

---

**2.** The designated material fails to reveal (1) how Simmons came to be on the tracks; and (2) if, or

when, he passed out on them before being struck by the train.

\* \* \* \* \*

Participating in any activity or event, including the operation of a vehicle, while . . . intoxicated. . . .

(R. 16).

 Under Indiana law, a contract for insurance is subject to the same rules of interpretation as other contracts. *Nuckolls,* 682 N.E.2d at 537–38. The interpretation is primarily a question of law for the court, *Tate v. Secura Ins.,* 587 N.E.2d 665, 668 (Ind.1992), and it is therefore a question which is particularly well-suited for disposition by summary judgment. *Stevenson v. Hamilton Mut. Ins. Co.,* 672 N.E.2d 467, 471 (Ind.Ct.App.1996), *trans. denied.* Although ambiguities are construed in favor of the insured, clear and unambiguous policy language must be given its plain and ordinary meaning. *Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664, 667 (Ind.1997). Failure to define terms in an insurance policy does not necessarily make it ambiguous. *Id.* Rather, an ambiguity exists where the provision is susceptible to more than one reasonable interpretation. *Id.*

 Generally, insurers are free to limit liability in any manner not inconsistent with public policy, and an unambiguous exclusionary clause is ordinarily entitled to enforcement. *Erie Ins. Co. v. Adams,* 674 N.E.2d 1039, 1041 (Ind.Ct.App.1997), *trans. denied.* However, exceptions, limitations and exclusions must be plainly expressed in the policy. *Id.* The exclusionary clause must clearly and unmistakably bring within its scope the particular act or omission that will bring the exclusion into play, and any doubts to the coverage under the policy shall be construed against the insurer to further the policy's basic purpose of indemnity. *Id.; see also Nuckolls,* 682 N.E.2d at 538. This strict construction against the insurer is "driven by the fact that the insurer drafts the policy and foists its terms upon the customer." *Stevenson,* 672 N.E.2d at 471 (citation omitted).

In the present case, both parties agree that the language in the exclusion provision is clear and unambiguous, but dispute the applicability of the provision to the undisputed facts. AFLAC contends that the exclu-

sion is applicable "because Simmons was legally intoxicated at the time of his accidental death." Appellant's Brief, p. 4. AFLAC argues that its evident intention was "to protect itself from accidental death claims resulting from a covered person's own reckless acts" and "to nullify benefits when an insured's accidental death was related to voluntary intoxication." *Id.,* at 8, 9.

 As AFLAC acknowledges, however, the exclusion provision only applies if 1) Simmons' death resulted from or was caused by, 2) participating in an activity or event, and 3) while intoxicated as defined by Indiana law. AFLAC's interpretation renders the requirements that the insured's death be caused by or the result of "participating in an activity or event" virtually meaningless. This court cannot ignore the plain words of an insurance contract, *Farthing v. Life Ins. Co. of N. America,* 500 N.E.2d 767, 772 (Ind.Ct.App.1986), and we will make all attempts to construe the language in a contract so as not to render any words, phrases, or terms ineffective or meaningless. *Bicknell Minerals, Inc. v. Tilly,* 570 N.E.2d 1307, 1316 (Ind.Ct.App.1991). Participate means "to take part" or "to have a part or share in something." Webster's Ninth New Collegiate Dictionary 858 (1989). An activity is the state or condition of being active. *Id.* at 54. An event is defined as an "occurrence" or "something that happens." *Id.* at 430. Accordingly, the exclusion provision applies only if the insured was taking part in some action or occurrence while legally intoxicated which caused or resulted in his death. We find that AFLAC has not shown that the exclusionary provision at issue clearly and unmistakably bring within its scope the factual circumstances of this case.

 In the present case, the designated materials do not reveal that Simmons was participating in an event or activity which caused or resulted in his death. At the time, Simmons was struck by a train, he was unconscious and lying across railroad tracks. According to the death certificate, the fatal injury occurred when Simmons was "passed out on railroad tracks" and struck by a train. (R. 75). Although the designated materials reveal that Simmons was legally intoxicated

at the time of his death, AFLAC has failed to designate any materials which reveal that Simmons was participating in any activity or event. In fact, when asked in an interrogatory what "activity or event" Simmons was "participating in" which caused his death, AFLAC merely took the position that "the fact that Simmons was intoxicated (as that term is defined by Indiana law) satisfies the exclusion of coverage under its policy and prohibits payment to any beneficiary." (R. 90). Because the undisputed evidence merely reveals that Simmons was unconscious at the time he was struck by the train which resulted in his death, he clearly was not participating in any event or activity which caused his death within the plain meaning of the exclusion provision. Therefore, the trial court properly entered summary judgment in favor of Russell on her breach of contract claim.

## II. *Cross–Appeal—Punitive Damages*

■ In her cross-appeal, Russell claims that the trial court erred in entering summary judgment against her on her claim for punitive damages.

In *Nuckolls*, our supreme court stated as follows:

> Under Indiana law, in order for a plaintiff to recover punitive damages from a breach of contract claim, the plaintiff must 'plead and prove the existence of an independent tort of the kind for which Indiana law recognizes that punitive damages may be awarded.' An insurance company has a duty to deal with its insured in good faith, and the breach of that duty allows for a cause of action in tort. The erroneous denial of coverage does not necessarily violate an insurance company's duty of good faith. Furthermore, proof that a tort was committed does not necessarily establish the right to punitive damages. Punitive damages may be awarded only if there is clear and convincing evidence that defendant 'acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law,

> honest error or judgment, overzealousness, mere negligence, or other human failing.'

682 N.E.2d at 541 (citations omitted).

In the present case, the designated evidence in a light most favorable to Russell reveals that AFLAC denied coverage in good faith under its interpretation of the policy language. In support of its motion for summary judgment, AFLAC designated the pleadings, which included a August 8, 1996 letter sent by AFLAC to Russell denying Russell's claim for benefits under the policy. In the letter, AFLAC stated that it had reviewed Russell's claim and that AFLAC would be unable to provide benefits due to the exclusionary language at issue. This letter reveals that AFLAC merely interpreted the policy language differently than did Russell. Accordingly, Russell's claim for punitive damages rests upon a disagreement over how to interpret the policy. There is no evidence of malice, fraud, gross negligence or oppressiveness on the part of AFLAC. *See Nuckolls*. Therefore, there is no genuine issue of material fact precluding summary judgment in favor of AFLAC regarding Russell's punitive damages claim.

We affirm.

SHARPNACK, C.J., concurs.

STATON, J., dissents with separate opinion.

STATON, Judge, dissenting.

I dissent. As noted by the majority, the exclusionary clause at issue only applies if 1) Simmons' death resulted from or was caused by, 2) participating in an activity or event, 3) while intoxicated as defined by Indiana law. The designated material reveals that Simmons' death resulted from injuries he sustained after being struck by a train and that Simmons' blood alcohol content at the time was .326. This evidence clearly establishes the first and third elements of the insurance policy's exclusionary clause. The only question is whether Simmons was "participating in any activity or event" when he was struck by the train. The majority concludes that he was not. I disagree.

Simmons' death certificate concludes that he was struck by the train after he passed out on the tracks. It is unclear how the conclusion that Simmons passed out was reached since there were no witnesses to the accident. Even assuming it is correct, I must still conclude that Simmons' act of lying on the railroad tracks constitutes participation in an event. Citing Webster's Ninth New Collegiate Dictionary, the majority defines participate as "to take part" or "to have a part or share in something." They define an event as an "occurrence" or "something that happens." By placing himself on the railroad tracks, Simmons took part in the occurrence which would result in his death. Being struck by the train was the occurrence.

The majority relies upon the coroner's conclusion that Simmons was unconscious at the time the train struck him to conclude that Simmons could not have been participating in any event or activity. However, the fact that Simmons may not have been active or aware of his circumstances at the precise moment the train struck him is of no moment. Simmons participated in the event which led to his death when he placed himself on the railroad tracks. That participation did not end at the moment he became unconscious. Simmons' participation became passive, but it continued until the time the accident occurred.

Because the undisputed facts reveal that Simmons' actions clearly and unmistakably fell within the exclusion to his accidental death insurance policy, I would reverse the trial court's denial of AFLAC's motion for summary judgment. Accordingly, I dissent.