AUTO–OWNERS INSURANCE COMPANY, Correctly Referred to as "Owners Insurance", Appellant,

v.

Crystal GOODE, Appellee.

No. 2008–CA–000350–MR.

Court of Appeals of Kentucky.

Feb. 13, 2009.

Discretionary Review Denied by Supreme Court Oct. 21, 2009.

David A. Nunery, Campbellsville, KY, for appellant.

Theodore H. Lavit, Joseph R. Stewart, Lebanon, KY, for appellee.

Before COMBS, Chief Judge; KELLER, Judge; HENRY,[1] Senior Judge.

## OPINION

KELLER, Judge.

Auto Owners Insurance Company, correctly referred to as "Owners Insurance" (Owners) appeals from a jury verdict in favor of Crystal Goode (Crystal). On appeal, Owners argues that Crystal was not covered under the underinsured motorists' provisions of her mother's motor vehicle insurance policy because Crystal owned an automobile at the time of the accident in question and also that the trial court gave faulty jury instructions. In the alternative, Owners argues the trial court should have granted its motion for a directed verdict. Crystal argues to the contrary. For the following reasons, we affirm.

## FACTS

The undisputed facts are as follows: (1) Crystal was a passenger in a vehicle involved in a one-car motor vehicle accident on December 29, 2002; (2) Crystal settled with the vehicle's insurer and proceeded against Owners, which provided a policy of insurance (the Policy) to Crystal's mother, Mary Long (Long); (3) the Policy contained underinsured motorist coverage; and (4) at the time of the accident, Crystal owned a 1994 Ford Escort (the Escort) that was in a state of disrepair. The Policy's underinsured motorist coverage extended to "a relative who does not own an automobile." The Policy defines a relative as "a person related to [the insured] by blood, marriage or adoption who resides in [the insured's] household." It defines "automobile" as "a private passenger automobile," further defined as "a four wheel: a) private passenger or station wagon type automobile ... not used in the business of carrying passengers for hire."

At trial, Owners asserted that Crystal did not fall within the definition of "relative" under the policy. The jury found that she did, and Owners is not contesting that finding on appeal. Owners also asserted at trial that Crystal owned an automobile at the time of the accident and therefore was not covered under the policy. The jury determined the Escort "had been retired from service for an indefinite time into the future" and awarded Crystal damages under the Policy. The primary issue before us is whether the Escort was an automobile under the Policy. Therefore, we will confine our recitation of additional facts to those related to that issue.

In April 2002, Crystal and her then-husband, Kelly Goode (Kelly), had an altercation while in the Escort. During the course of the altercation, Kelly and Crystal broke off the Escort's turn signal and windshield wiper control arms. Thereafter, the windshield wipers, lights, and other electrical devices in the steering column worked erratically. Sometime between April and June 2002, Kelly removed the steering column with the intent of replacing/repairing it, but he could not find the necessary parts. In June 2002, Crystal moved out of the residence she shared with Kelly and moved in with Long. At that time, Crystal had the Escort towed to Long's residence, where it stayed until Crystal and Kelly reconciled in March

---

1. Senior Judge Michael L. Henry sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2003.[2]

In September 2002, Crystal purchased insurance for the Escort so that she could renew its registration. However, because she was not driving the Escort, Crystal decided not to renew its registration and let the insurance lapse. We note Crystal testified that she gave a different version of events in a statement taken by counsel for Owners in July 2003. At that time, Crystal stated she let the insurance lapse because she was seeking a cheaper policy.

In her 2003 statement, Crystal also stated that someone could drive the Escort if necessary; however, she would not. At trial, Crystal testified that the Escort was not drivable. Furthermore, she testified that, in 2003, she meant the Escort could be driven but only if the original steering column were re-installed.

Long's neighbor, Joe Randolph (Randolph), testified that Long asked him if he could repair the Escort's steering column and brakes. Randolph stated that he could make the repairs; however, he never quoted a price, and Long did not further pursue the matter. Randolph and his wife testified they believed the Escort was not roadworthy and had not been driven while parked near Long's residence.

Josh Gamble (Gamble) testified he purchased the Escort for $500.00 in March 2004. When he purchased the Escort, it did not have a steering column, lights, functioning windshield wipers, or turn signals. Furthermore, the tires had no tread. Gamble replaced the steering column but did not replace the tires and has never driven the Escort. Gamble admitted that he probably could drive the Escort but for the worn tires.

Long and Crystal's sister, Kathryn Odom, confirmed the testimony by Kelly and Crystal that the Escort did not have a steering column or functioning turn signals or lights. Both also testified that the Escort was not roadworthy, and Long testified she believed Crystal intended to repair the Escort at some point before she sold it to Gamble.

Allen Jarvis (Jarvis), a field claims representative for Owners, testified he investigated the claim by Crystal. According to Jarvis, the Escort would not have been roadworthy in the condition described by the witnesses; however, he did not look at the Escort and did not know whether it was, in fact, roadworthy at the time of the accident. Furthermore, Jarvis testified that an insurer, knowing the condition of the Escort as described, should not have issued Crystal a policy of insurance.

As noted above, Owners has raised three issues: (1) whether the trial court appropriately interpreted the Policy; (2) whether the trial court properly instructed the jury on the issue of operability of the Escort; and (3) whether the trial court properly denied its motion for directed verdict. We will address these issues in the same order.

## STANDARD OF REVIEW

Because the issues raised by Owners on appeal have different standards of review, we will set forth the appropriate standard as we analyze each issue.

## ANALYSIS

### 1. Interpretation of the Policy

Interpretation and construction of an insurance contract is a matter of law for the court. *See Stone v. Kentucky Farm Bu-*

---

**2.** The reconciliation was only temporary as Crystal and Kelly's marriage had been dis-

solved by the time of trial.

*reau Mutual Ins. Co.,* 34 S.W.3d 809, 810 (Ky.App.2000); *Kemper Nat'l Ins. Companies. v. Heaven Hill Distilleries, Inc.,* 82 S.W.3d 869, 871 (Ky.2002). If the appeal is a question of law it is subject to *de novo* review. *Carroll v. Meredith,* 59 S.W.3d 484, 489 (Ky.App.2001); *see also A & A Mechanical, Inc. v. Thermal Equipment Sales, Inc.,* 998 S.W.2d 505, 509 (Ky.App. 1999); *Aubrey v. Office of Attorney General,* 994 S.W.2d 516, 518–19 (Ky.App.1998); *and Cinelli v. Ward,* 997 S.W.2d 474, 476 (Ky.App.1998).

 As noted above, the primary issue raised by Owners is whether the definition of "automobile" in the Policy would extend to the Escort. "The terms of insurance coverage should not be extended beyond any clear or unambiguous limit." *Masler v. State Farm Mut. Auto. Ins. Co.,* 894 S.W.2d 633, 635–36 (Ky.1995). "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.,* 94 S.W.3d 381, 385 (Ky.App.2002). "[W]e are not permitted to create an ambiguity where none exists even if doing so would result in a more palatable outcome." *First Commonwealth Bank of Prestonsburg v. West,* 55 S.W.3d 829, 836 (Ky.App.2000). However, "[w]here a contract is ambiguous or silent on a vital matter, a court may consider parol and extrinsic evidence involving . . . the subject matter of the contract, the objects to be accomplished, and the conduct of the parties." *Cantrell* at 385. In order to resolve this issue, we must first determine if the term "automobile" as used in the Policy is ambiguous.

 The Policy defines automobile as a private passenger automobile, which is defined as "a four wheel . . . private passenger or station wagon type automobile . . . not used in the business of carrying passengers for hire." We hold that this definition is ambiguous for at least two reasons. First, the definition is circular because it essentially defines automobile as an automobile.

Second, the definition states that an automobile cannot be used in the business of carrying passengers for hire. It does not state for what purpose an automobile can be used; however, the implication in the definition is that an automobile is to be used for some purpose. In light of the language in the Policy, a reasonable person could interpret the definition of automobile as encompassing any four-wheeled non-commercial vehicle, whether operable or not, or as encompassing only four-wheeled non-commercial vehicles that are operable. Therefore, we hold the term "automobile," as used in the Policy, is ambiguous.

Owners has cited a number of opinions from other jurisdictions holding that the term "automobile" in an underinsured policy is not ambiguous. However, in *Middlesex Ins. Co. v. Quinn,* 225 Conn. 257, 622 A.2d 572 (1993); *American Family Mut. Ins. Co. v. Kittinger,* 147 Ill.App.3d 586, 101 Ill.Dec. 74, 498 N.E.2d 256 (1986); *Burkett v. American Family Ins. Group,* 737 N.E.2d 447 (Ind.Ct.App.2000); *Robertson v. Cumis Ins. Co.,* 355 So.2d 1371 (La.Ct.App.1978); and *Malo v. Aetna Cas. & Sur. Co.,* 459 A.2d 954 (R.I.1983), the courts do not address whether the automobile is operable. Therefore, these opinions are of little persuasive value.

Owners also cites to an Ohio case that is similar to the matter before us. In *Miller v. Shelby Mut. Ins. Co.,* 20 Ohio App.2d 323, 253 N.E.2d 801 (1969), the Ohio Seventh District Court of Appeals held that a son, who owned an inoperable motor vehicle, was not covered by the underinsured provisions of his father's insurance policy. In doing so, the court held the policy language was not ambiguous

and the operability of the automobile was of no significance. *Id.* at 802. However, in *Harshbarger v. Meridian Mut. Ins. Co.,* 40 Ohio App.2d 296, 319 N.E.2d 209 (1974), the Ohio Second District Court of Appeals held that "the term 'automobiles,' as used in the standard insurance clause, does not include permanently disabled vehicles or vehicles which are not used for travel on the roads and highways." *Id.* at 211. Furthermore, in *Santana v. Auto Owners Insurance Company,* 91 Ohio App.3d 490, 632 N.E.2d 1308 (1993), the Ohio Sixth District Court of Appeals held that "at some stage in time and under certain conditions a vehicle may no longer be considered a car, *i.e.,* a four-wheel private passenger automobile...." *Id.* at 1313. Therefore, the Ohio cases, which evidence a split in authority, are not helpful to Owners but rather support Crystal's position that the term "automobile" is ambiguous.

■ Having determined that the term "automobile" is ambiguous, we must determine its meaning. In *Lewis v. American Family Ins. Group,* 555 S.W.2d 579, 584 (Ky.1977), the Supreme Court of Kentucky held that "a car that has been retired from service for an indefinite time into the future should not be considered to be a 'passenger automobile' within the meaning of this insurance policy." *Id.* We note, as did Owners, the policy referred to by the Court was issued in the State of Indiana and the Court rendered its decision based on that state's law. However, we also note the Court did not cite to any specific Indiana statute or case law in support of its holding, but it simply referred to the language of the policy. Therefore, unlike

Owners, we believe the holding in *Lewis* is applicable.

As with the issue of ambiguity, Owners cites to a number of other jurisdictions for definitions of the term "automobile." [3] In Illinois, the test is whether the owner of an inoperable automobile intends to repair it and can do so "without incurring inordinate expense for parts and labor." *Quick v. Michigan Millers Mut. Ins. Co.,* 112 Ill.App.2d 314, 250 N.E.2d 819, 821 (1969). In Wisconsin, "[w]hether an inoperable automobile is in fact an automobile within the meaning of an automobile liability insurance policy ... is a question of fact." *State Farm Mut. Auto. Ins. Co. v. Rechek,* 125 Wis.2d 7, 370 N.W.2d 787, 790 (1985). Factors to consider in determining if an automobile is operable include the extent of repairs necessary to make the automobile operable, the cost of repairs compared to the value of the automobile, and whether the owner would contemplate insuring the automobile. *Id.* at 790–91. In Indiana, the court did not look to the intent of the owner but to the extent of the repairs needed to make the automobile operable. *Erie Ins. Co. v. Adams,* 674 N.E.2d 1039, 1043 (Ind.Ct.App.1997). The test in California is whether an automobile is capable of self-propulsion and, if not, whether there is a reasonable probability of restoring that capability. *Civil Service Emp. Ins. Co. v. Wilson,* 222 Cal.App.2d 519, 35 Cal.Rptr. 304 (1963). In *Travelers Indemnity Co. v. Duffin,* 28 Mich.App. 142, 184 N.W.2d 229 (1970) (overruled on other grounds), the Michigan Court of Appeals determined that whether the owner intended to repair an inoperable automobile was a key factor. The Florida District

---

**3.** Depending on the specific language of the policies in question, the courts variously use the terms "vehicle," "car," "automobile," or "private passenger automobile." Because the term at issue herein is "automobile," we will use that term rather than the various terms used by these courts.

Court of Appeals held that the factors to consider include

the length of time of the automobile's inoperability before the accident ... the extent of the vehicle's inoperability ... whether it was placed in storage prior to its restoration to operability ... and the subjective element of whether the owner intended to maintain the vehicle on the public streets.

*Bedgood v. Hartford Acc. & Indem. Co.,* 384 So.2d 1363, 1366 (Fla.Dist.Ct.App. 1980). The Missouri Court of Appeals held that the intent of the automobile's owner, the extent of repairs, and the cost of those repairs are all factors to consider in determining if an automobile is operable. *McKee v. American Family Mut. Ins. Co.,* 932 S.W.2d 801, 803 (Mo.Ct.App. 1996). In Washington, the key factors include the extent of the repairs, the intent of the owner, and whether the inoperability is temporary or permanent. *Farmers Ins. Co. of Washington v. Miller,* 87 Wash.2d 70, 549 P.2d 9, 11 (1976).

Based on the preceding analysis, other jurisdictions look to: (1) the extent of repairs necessary to make the automobile operable; (2) the cost to make those repairs; (3) and whether the owner intends to make those repairs. Owners argues the definition chosen by the trial court, "retired from service for an indefinite time into the future," is not in keeping with that authority. We disagree. The definition chosen by the trial court encompasses, to a greater degree than in other jurisdictions, the issue of intent. Although extent of damage and cost of repairs are not specifically mentioned in the definition, they are implied and certainly open to argument by counsel. In fact, counsel for Owners argued to the jury that the extent of damage was minor as were the repairs and that the only reason the Escort was not operable was that Crystal chose not to have it re-

paired. Finally, the definition chosen by the trial court is the definition provided by the Supreme Court of Kentucky in *Lewis.* Therefore, we discern no error in the trial court's definition.

### 2. Jury Instructions

 Alleged errors regarding jury instructions are questions of law and are subject to *de novo* review. *Hamilton v. CSX Transportation, Inc.,* 208 S.W.3d 272, 275 (Ky.App.2006).

The fundamental function of jury instructions is to set forth what the jury must believe from the evidence in order to return a verdict in favor of the party bearing the burden of proof. *Webster v. Commonwealth,* 508 S.W.2d 33, 36 (Ky. 1974). We acknowledge Kentucky has long employed the use of "bare bones" jury instructions that avoid an abundance of detail, providing only a framework of the applicable legal principles. *Olfice, Inc. v. Wilkey,* 173 S.W.3d 226 (Ky.2005). However, instructions may not be so vague or diluted as to obscure the jury's findings. Indeed, to ensure a fair trial and avoid unnecessary appellate procedure, they must be sufficiently clear to reveal precisely the jury's conclusions....

*Hilsmeier v. Chapman,* 192 S.W.3d 340, 344 (Ky.2006).

"Bare bones" jury instructions must be given with the understanding that they are merely a framework for the applicable legal principles. It becomes the role of counsel, then, to flesh out during closing argument the legal nuances that are not included within the language of the instruction.

*Olfice, Inc. v. Wilkey,* 173 S.W.3d 226, 230 (Ky.2005).

Owners argues that the jury instruction given by the circuit court regarding operability of the Escort did not comply with the

case law. However, that instruction precisely complied with the law as stated by the Supreme Court in *Lewis*. Furthermore, as noted above, Owners had ample opportunity to flesh out the legal nuances regarding the operability of the Escort. Therefore, we discern no error in the trial court's jury instruction.

### 3. Directed Verdict

On a motion for directed verdict, the trial judge must draw all fair and reasonable inferences from the evidence in favor of the party opposing the motion. When engaging in appellate review of a ruling on a motion for directed verdict, the reviewing court must ascribe to the evidence all reasonable inferences and deductions which support the claim of the prevailing party.

*Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814 (Ky.1992). Once the issue is squarely presented to the trial judge, who heard and considered the evidence, a reviewing court cannot substitute its judgment for that of the trial judge unless the trial judge is clearly erroneous. *Bierman v. Klapheke,* 967 S.W.2d 16, 18 (Ky.1998). Therefore, we cannot disturb the trial court's denial of Owners' motion for directed verdict unless that denial was clearly erroneous.

▆▆▆ Owners argues that Crystal failed to introduce sufficient evidence to meet her burden of proving the Escort was inoperable and, therefore, not an "automobile" under the Policy. In support of its argument, Owners asserts that the Escort needed only minor repairs and that Crystal intended to make those repairs. However, considering the evidence that the Escort did not have a steering column, needed brake repairs, had bald tires, and had not been driven for several months, a jury could have reasonably concluded the repairs necessary to make the car roadworthy and/or operable were not minor in nature. Furthermore, considering the preceding evidence, a jury could have concluded that any intent Crystal may have had to repair the Escort was not realistic. Therefore, we discern no error in the trial court's denial of Owners's motion for a directed verdict.

### CONCLUSION

For the foregoing reasons, we hold the circuit court correctly defined "automobile" as used in the Policy and correctly instructed the jury on that issue. Furthermore, we discern no error in the circuit court's denial of Owners's motion for a directed verdict. Therefore, we affirm.

ALL CONCUR.