**Morris Quick, Administrator of the Estate of Dale G. Quick, Deceased, Plaintiff-Appellee, v. Michigan Millers Mutual Insurance Company, a Corporation, Defendant-Appellant.**

Gen. No. 69–7.

Second District.

September 9, 1969.

Snyder, Clarke, Dalziel, Holmquist & Johnson, of Waukegan, for appellant.

Fuqua, Fuqua, Winter & Homer, of Waukegan, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

Morris Quick, Administrator of the Estate of Dale G. Quick, deceased, brought this suit against the defendant seeking to recover under the terms of an insurance policy which he, individually, had with the defendant. The policy contained the following provisions:

> "The company will pay all reasonable medical expense incurred within one year from date of accident for bodily injury caused by accident and sustained by
> "(1) The named insured or a relative . . .

"...

"(c) through being struck by a highway vehicle;

"The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; . . .

"Under the Uninsured Motorists Coverage, the following are insureds:

"(a) The named insured and any relative
. . . ."

"Under definitions:

" 'relative' means a person related to the named insured by blood, marriage or adoption who is a resident of the same household, provided neither such relative nor his spouse owns a private passenger automobile; . . . ."

■ The coverage question before the court was whether or not, the plaintiff's son, Dale G. Quick, who lived within the same household, was a "relative" within the meaning of the insurance policy. The question depends upon whether or not a certain car which Dale owned was a "private passenger automobile" within the terms of the policy. The trial court held that Dale was a "relative" within the meaning of the insurance policy and that the defendant was liable under the terms of the policy. The defendant has appealed to this court.

In June of 1966, Dale bought a 1955 Chevrolet automobile for approximately $200. Title to the car issued to Dale and license plates were purchased for it. The car was not in good condition, however, and was towed to his home where he worked on it until it was operable. From

the record, it is difficult to determine this date, but it was sometime in the fall of 1966, and the car was operable for perhaps five weeks. It is clear, however, that it did not run at any time after Christmas of 1966.

Dale purchased 1967 license plates, but these were never put on the car. In mid-January, he obtained a new insurance policy covering the car, but this was cancelled on January 28, 1967, since Dale could not get the car to run. Also, he and his father had decided that under these circumstances it was not wise to pay for insurance.

Dale continued to do some work on the car during the winter of 1967. However, his interest or determination to make it operative apparently dwindled, and the car remained in the same inoperable condition for at least several weeks prior to March 9, 1967. On that date Dale, while a pedestrian, was struck and killed by a hit-and-run driver.

At that time, the radiator had been removed from the car and was stored in the garage; the battery, the two rear wheels, the head, manifolds, electrical parts, and pumps, had been removed; the transmission was in the trunk of the car; the hood was in the garage; the carburetor, distributor and camshaft had been sold; the parts of the motor which remained were rusty, pitted and grooved; only the block was still in the automobile, and it could not have been repaired without being bored to a different size, which would have been an expensive procedure.

About two weeks prior to his death, Dale told his father that if he would get somebody to haul the 1955 Chevrolet away, he, Dale, would help in towing it to the junkyard. Also, shortly before his death, Dale related to a friend that the car was going to be towed to a junkyard.

The majority of the cases touching the question of the meaning of the word "automobile" as used in an automobile liability policy, deal with the insuring clause which provides that the insurance shall cover the de-

317

scribed automobiles and, also, any newly acquired automobile if either it replaces a described automobile, or the company insures all automobiles owned by the named insureds. In a number of these cases it was found, under the particular factual situation before the court, that a particular inoperable automobile either was, or might be, an "automobile" as that word is used in an automobile liability policy. Republic Ins. Co. v. State Farm Ins. Co. (Tex), 416 SW2d 557 (1967); Green v. American Home Assur. Co. (La), 169 So2d 213 (1964); Williams v. Standard Acc. Ins. Co., 158 Cal App2d 506, 322 P2d 1026 (1958).

Other cases, under the particular facts before the courts, have held that a nonoperating automobile either was not, or might not be, considered an "automobile" under the terms of an automobile liability insurance policy. Palmer v. Sunberg, 71 Ill App2d 22, 217 NE2d 463 (1966); Iowa Nat. Mutual Ins. Co. v. McGhee, 292 F Supp 176 (WD Va 1968); Hames Ready Mix, Inc. v. Transit Cas. Co., 260 Cal App2d 173, 66 Cal Rptr 898 (1968); Glens Falls Ins. Co. v. Gray, 386 F2d 520, (CA 5th, 1967); Civil Service Employees Ins. Co. v. Wilson, 222 Cal App2d 519, 35 Cal Rptr 304 (1963).

Even though the various cited cases differ factually, the basic approach to the problem by the various courts is the same. Indicative of the approach is the language of the court in Glens Falls Ins. Co. v. Gray, supra, pages 524 and 525, where it is stated:

"The possession of an automobile needing major repairs—which was not intended to be used and was not used until after the repairs were completed during the policy year—can hardly be thought to be ownership for liability insurance purposes, since the principal purpose of such insurance is to provide coverage for an automobile which is to be driven and

318

which may become involved in an accident or other mishap."

In those cases where the circumstances—be they the combination of the degree of disrepair of the car, the intent of the owner, or otherwise—suggest that the non-operating condition is a mere temporary one, the courts have been inclined to find that the vehicle was an "automobile" within the terms of the policy. In those cases, where such circumstances suggest either that the inoperable condition is probably permanent, or apt to be of long duration with little reasonable possibility of restoring the car to a condition where it can be driven on the roads, the courts have then tended to find that the vehicle is not an "automobile" within the terms of the policy.

Under the circumstances of this case, we agree with the determination of the trial court. Without repeating all of the indicia here, the car was clearly in such condition that it could not have been made an operating private passenger automobile without incurring inordinate expense for parts and labor. The car was not, at the time of the accident, in such condition that it could have been driven. We question whether it was such an automobile, at that time, as might be contemplated by reasonable persons to be a private passenger automobile.

The additional facts—that Dale and his father had cancelled the liability insurance previously in force on the car, the comparatively short period of time during which the car actually did run, the length of time which had elapsed since the car last ran, the general dismantling of the car and sale of its parts, and the expressed intent that the car was to be taken to the junkyard—are all circumstances which further support the finding of the trial court.

The defendant also contends that it was error to admit the testimony of the two witnesses of the statements of

Dale G. Quick evidencing his intention to haul his car to the junkyard. The trial court admitted this testimony to show the frame of mind of the deceased at that time—not for the truthfulness of what was said. The defendant contends that declarations of a deceased may be admitted to show intent, under circumstances such as in the case at bar, only when they accompany a related act.

Edward W. Cleary, in his Handbook of Illinois Evidence, 1st ed, § 13.26, pp 172–174, criticizes the emphasis, placed by some cases, on the requirement that a declaration showing intent be accompanied by a contemporaneous, or nearly so, related act. At pages 173 and 174, he states: "This unfortunate insistence upon an accompanying act is one of the progeny of res gestae, originally used as a justification for admitting declarations and other circumstances surrounding an act but later perverted into grounds for excluding declarations unless accompanying an act."

█ In this case, however, the intent of Dale as to whether or not his automobile was to be restored or junked, was a distinct and material fact in a chain of circumstances. It was one of the factors—if there could be proof of intent—to be considered in determining the ultimate issue of whether the vehicle was an "automobile" within the terms of the insurance policy. A person's state of mind can be manifested no better than by his written or oral expression evidencing this state to others. Whenever intention is itself a distinct and material fact in a chain of circumstances, it may be proved by testimony of contemporaneous oral declarations. Mutual Life Ins. Co. v. Hillmon, 145 US 285, 295 (1891); Nolan v. American Telephone & Telegraph Co., 326 Ill App 328, 349, 350, 61 NE2d 876 (1945); Cleary, Handbook of Illinois Evidence, 2nd ed, § 17.4. Also see: Illinois Bldg. Authority v. Dembinsky, 101 Ill App2d 59, 65, 242 NE2d 67 (1968).

■ We do not believe that it was error for the court to admit the testimony complained of, and further, that there was abundant evidence without such testimony, to support the finding of the trial court. Accordingly, the judgment of the trial court is affirmed.

Judgment affirmed.

MORAN, P. J. and SEIDENFELD, J., concur.