STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Respondent,

v.

Curtis L. RECHEK, Defendant-Respondent,

GENERAL CASUALTY COMPANY OF WISCONSIN, Defendant-Appellant.

Court of Appeals

*No. 84–903. Argued March 26, 1985.—Decided May 8, 1985.* (Also reported in 370 N.W.2d 787.)

For the defendant-appellant, there were briefs and oral argument by *David M. Skoglind* of *Dempsey, Magnusen, Williamson & Lampe,* of Oshkosh.

For the plaintiff-respondent, there was a brief by *James C. Herrick, Jr.* and *Keary W. Bilka* of *Herrick & Bilka, S.C.,* of Fond du Lac. Oral argument by *Keary W. Bilka.*

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J. The automobile policy in this case included, among those insured, relatives of the household provided that the relatives did not own a "private passenger automobile." To be decided on this appeal is whether this state will recognize the majority rule adopted in other jurisdictions that a vehicle can reach such a condition of disrepair that it can no longer be considered an automobile for insurance policy purposes. [1]

---

[1] The four jurisdictions that have reached this issue are as follows: *Travelers Indemnity Co. v. Duffin,* 184 N.W.2d 229 (Mich. Ct. App. 1970, *rev'd on other grounds,* 184 N.W.2d 739 (Mich. 1971); *Glens Falls Insurance Co. v. Gray,* 386 F2d 520 (5th Cir. 1967); *Farmers Insurance Co. of Washington v. Miller,*

We adopt the majority rule for Wisconsin, as did the trial court, and we affirm.

Curtis Rechek was involved in an accident on December 24, 1975. He was living at home with his parents at that time. Curtis' father, Eugene Rechek, had an automobile insurance policy with General Casualty. A lawsuit arose from the accident and State Farm, the insurer of the other driver involved, impleaded General Casualty. General Casualty denied that Curtis Rechek was an insured because he possessed two cars of his own at the time of the accident and thus fell under the exclusion for relatives who owned a "private passenger automobile." A coverage trial ensued. Various witnesses testified concerning the condition of Curtis Rechek's vehicles at the time of the accident. At the conclusion of this trial, the trial court found that the vehicles were in such an inoperable state that they could no longer be considered automobiles within the contemplated provisions of the policy. General Casualty appeals.

General Casualty first asserts that the insurance policy is clear on its face; therefore, a discussion of whether to adopt the majority rule is unnecessary because the insurance policy, by its very terms, clearly preempts the issue. General Casualty relies on its definition of automobile which, as stated in its policy, "means a four wheel land motor vehicle designed for use principally upon a public road." General Casualty argues that it does not matter whether the automobile is inoperable, as long as it was *designed* for use upon a public road. If a relative owns one of these vehicles, the relative is not covered.

We are mindful of the caveat that we must not modify clear and unambiguous language when construing an insurance policy. *Herwig v. Enerson & Eggen*, 98 Wis. 2d 38, 40, 295 N.W.2d 201, 203 (Ct. App. 1980), *aff'd*, 101

549 P.2d 9 (Wash. 1976); *Quick v. Michigan Millers Mutual Insurance Co.*, 250 N.E.2d 819 (Ill. App. Ct. 1969).

Wis. 2d 170, 303 N.W.2d 669 (1981). We are not persuaded, however, that the language is as lucid as General Casualty would have us believe. The term "designed for use" is reasonably or fairly susceptible to more than one construction. There is nothing in the policy language, for instance, specifically excluding or including inoperable cars within the above definition. A vehicle, while closely resembling an automobile visually, may have no functional similarity and may therefore be incapable of "independent" movement. *See Travelers Indemnity Co. v. Duffin,* 184 N.W.2d 229, 231 (Mich. Ct. App. 1970), *rev'd on other grounds,* 184 N.W.2d 739 (Mich. 1971). Since an automobile designed for use carries within itself a source of power, lack of that power may render it to be something other than what it was designed for.

We thus deem that the language of the policy calls for construction. Ambiguities in an insurance policy prepared by an insurer should be construed against the insurer. *Bertler v. Employers Insurance of Wausau,* 86 Wis. 2d 13, 17, 271 N.W.2d 603, 605 (1978). Exceptions to general liability are to be strictly construed against the insurer. *Wisconsin Builders, Inc. v. General Insurance Co. of America,* 65 Wis. 2d 91, 103, 221 N.W.2d 832, 838 (1974). An insurance policy is to be construed to give effect to the intentions of the parties as determined by applying the objective test of how it would be understood by a reasonable lay person in the position of the insured and in accordance with the common and ordinary meaning it would have in the mind of that person. *Bertler* at 17–18, 271 N.W.2d at 605.

The purpose of the policy provision in question is to provide "drive-other-cars" liability coverage to a resident relative so long as the relative does not acquire and operate his or her own auto. In that case, the relative should insure his or her own vehicle and thereby obtain "drive-other-cars" coverage through the independent

policy. The principal purpose of an independent policy for the relative who obtains an automobile is to provide coverage for that automobile should it become involved in an accident or other mishap. *See Glens Falls Insurance Co. v. Gray*, 386 F.2d 520, 524–25 (5th Cir. 1967). Without these limitations, a person could purchase just one policy on only one automobile and cover relatives using other automobiles frequently driven or at least having the opportunity to be driven. *Quinlan v. Coombs*, 105 Wis. 2d 330, 332, 314 N.W.2d 125, 127 (Ct. App. 1981).

It is reasonable for a relative to believe that an automobile, unintended for use unless or until major repairs are made, is an unlikely candidate for liability insurance. Since we construe the policy in favor of insureds, we adopt the majority rule that at some stage in time a vehicle may reach such a condition that it is no longer considered an automobile designed for use on the public highways. *Farmers Insurance Co. of Washington v. Miller*, 549 P.2d 9, 11 (Wash. 1976). The following principles apply:

In those cases where the circumstances—be they the combination of the degree of disrepair of the car, the intent of the owner, or otherwise—suggest that the non-operating condition is a mere temporary one, the courts have been inclined to find that the vehicle was an "automobile" within the terms of the policy. In those cases, where such circumstances suggest either that the inoperable condition is probably permanent, or apt to be of long duration with little reasonable possibility of restoring the car to a condition where it can be driven on the roads, the courts have then tended to find that the vehicle is not an "automobile" within the terms of the policy.

*Quick v. Michigan Millers Mutual Insurance Co.*, 250 N.E.2d 819, 821 (Ill. App. Ct. 1969).

Whether an inoperable automobile is in fact an automobile within the meaning of an automobile liability insurance policy, as set forth by the analysis in *Quick*, is a question of fact. *See Drysdale v. State Farm Mutual Insurance Co.*, 163 N.W.2d 654, 655 (Mich. Ct. App. 1968).

As conceded by General Casualty during oral argument, the coverage trial was a factual one with findings of fact made at its conclusion. The trial court's finding that Curtis Rechek's cars could not be considered as private passenger automobiles within the terms of the policy is therefore subject to the clearly erroneous rule. *See* sec. 805.17 (2), Stats.

We have read the record and conclude that the trial court's findings are not clearly erroneous. Curtis Rechek testified that he bought a 1969 Dodge in March, 1974 for $1,500 and drove it until the fall of 1975. He stopped operating it when he struck a deer and the frame sprung. After the accident, the motor needed a new camshaft. The two rear tires were flat when parked. It was Curtis Rechek's opinion that the 1969 Dodge was not worth the repairs needed to make it operable. No valid plates were issued after operation ceased. Eventually, the engine was taken out and sold; the rest of the car was sold for $100. Candidly, General Casualty admitted at oral argument that the Dodge was in such an inoperable state that insurance would probably not be contemplated for it. We agree.

After the Dodge could no longer be operated, Curtis Rechek bought a 1968 Plymouth for $50. He drove it for six weeks and then parked it next to the Dodge approximately one month before the accident. He could not get it started in cold weather—it would not even fire. He surmised that the repair costs would greatly exceed the value of the automobile. He thought the bearings were out and that the spark plug wiring was faulty as well

as the distributor. Major repairs were needed to get the automobile running again; these repairs far exceeded the $50 market value of the automobile. We hold that these are sufficient facts to find the Plymouth as being inoperable such that insurance would not be contemplated for it. We, therefore, affirm.

*By the Court.*—Judgment affirmed.