Travis L. BEERBOHM, Lawrence Beerbohm, and Bonnie Beerbohm, Plaintiffs-Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Matthew J. Jordan, Rolland L. Freitag, Debra Oschmann-Schultz, and Physicians Plus Insurance Corporation, Defendants,

MID-CENTURY INSURANCE COMPANY/FARMERS INSURANCE EXCHANGE, Defendant-Respondent.

Court of Appeals

*No. 99–1784. Submitted on briefs January 11, 2000.—Decided April 20, 2000.*

2000 WI App 105

(Also reported in 612 N.W.2d 338.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Paul M. Erspamer* of *Lisko & Erspamer, S.C.* of Waukesha.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Susan R. Tyndall* of *Hinshaw & Culbertson* of Milwaukee.

Before Dykman, P.J., Vergeront and Roggensack, JJ.

¶ 1. DYKMAN, P.J. Travis L., Lawrence and Bonnie Beerbohm appeal from a trial court's grant of summary judgment in favor of Mid-Century Insurance Company/Farmers Insurance Exchange (Farmers). The Beerbohms contend that the trial court erred in determining that Farmers was not liable for injuries Travis sustained in a motorcycle accident. The Beerbohms argue that language excluding coverage for motorcycles in an insurance policy issued by Farmers violates WIS. STAT. §§ 632.32 and 344.33 (1997–98).[1] They also assert that Farmers is liable as the insurer of the father of the teenager who was driving the motorcycle because of the father's liability under Wisconsin's sponsorship statute. Finally, the Beerbohms argue that Farmers is liable under the newly-acquired vehicle clause in the policy. We disagree with these arguments and affirm.

## I. Background

¶ 2. In the summer of 1995, James Jordan's sixteen-year-old son Matthew bought a motorcycle. A few weeks later, while giving his friend Travis Beerbohm a ride on the back of the motorcycle, Matthew was

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

involved in an accident. Matthew and Travis were both injured. Matthew's parents did not live together and, at the time of the accident, Matthew was living with his mother. However, both of Matthew's parents shared Matthew's custody. James had originally sponsored Matthew's driver's license, but after James revoked his sponsorship, Matthew's mother sponsored him.

¶ 3. Prior to the accident, James had purchased automobile liability insurance from Farmers. James's policy provided the following general definitions:

> Private Passenger Car means a four wheel land motor vehicle of the private passenger or station wagon type actually licensed for use upon public highways. It includes any motor home with no more than six wheels and not used for business purposes.
> . . . .
> Utility Car means a four wheel land motor vehicle licensed for use upon public highways, with a rated load capacity of not more than 2,000 pounds, of the pickup or van type. It does not mean a vehicle used in any business or occupation other than farming or ranching.

¶ 4. In Part I, entitled "Liability," James's policy provided, in part:

> [Farmers] will pay damages for which any insured person is legally liable because of bodily injury to any person and/or property damage arising out of the ownership, maintenance or use of a private passenger car, a utility car, or a utility trailer.
> [Farmers] will defend any claim or suit asking for these damages. [Farmers] may settle when we consider it appropriate.
> . . . .
> Insured person as used in this part means:
> 1. You or any family member.

The "Exclusions" section of Part I of the policy provided, in part:

> This coverage does not apply to:
>
> . . . .
>
> 9. Bodily injury or property damage arising out of the ownership, maintenance or use of any motorized vehicle with less than four wheels.

¶ 5. After the accident, Travis Beerbohm and his parents sued Matthew, James and Farmers for negligence.[2] The trial court granted Farmers' motion for summary judgment and dismissed all claims against it. The court concluded that Farmers was not liable because its policy language clearly excluded coverage for the use of vehicles with less than four wheels, such as motorcycles. The Beerbohms appeal.

## II. Standard of Review

¶ 6. We review a trial court's grant or denial of summary judgment de novo, using the methodology set out in WIS. STAT. § 802.08(2). *See Strassman v. Muranyi*, 225 Wis. 2d 784, 787, 594 N.W.2d 398 (Ct. App. 1999). We need not repeat that methodology here, except to note that summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See id.* In this case, "where there are no disputed issues of material fact, we need only determine whether the moving party is entitled to judgment as a matter of law." *Id.* at 787–88.

---

[2] The Beerbohms also sued Matthew's mother, the driver of the other vehicle in the accident, Matthew's mother's insurer, the other driver's insurer, and their own insurers. These parties are not relevant to this appeal.

## III. Analysis

### A. *Exclusion of Motorcycle Coverage*

¶ 7. The Beerbohms assert that the trial court incorrectly concluded that Farmers was not liable under the terms of James's policy. They contend that Farmers' exclusion of coverage for motorcycles violates Wisconsin's Omnibus Coverage Statute, WIS. STAT. § 632.32, and Wisconsin's financial responsibility laws, WIS. STAT. ch. 344. The Beerbohms point out that "where a contractual provision is in direct conflict with a statute, the statute governs." *WEA Ins. Corp. v. Freiheit,* 190 Wis. 2d 111, 119, 527 N.W.2d 363 (Ct. App. 1994). In particular, they argue that WIS. STAT. § 344.33 bars the exclusion of motorcycle coverage because it provides that "[a] motor vehicle policy of liability insurance shall insure the person named therein using *any motor vehicle* with the express or implied permission of the owner." WIS. STAT. § 344.33(2) (emphasis added).

¶ 8. The interpretation and application of statutes and insurance policy provisions to undisputed facts are questions of law that we review de novo. *See State v. Eastman,* 220 Wis. 2d 330, 334–35, 582 N.W.2d 749 (Ct. App. 1998); *Steven G. v. Herget,* 178 Wis. 2d 674, 684, 505 N.W.2d 422 (Ct. App. 1993). When we interpret a statute, our purpose is to ascertain the intent of the legislature and give it effect. *See State ex rel. Frederick v. McCaughtry,* 173 Wis. 2d 222, 225, 496 N.W.2d 177 (Ct. App. 1992). Absent ambiguity, we give statutory language its ordinary meaning. *See id.* at 225–26.

██

¶ 9. Similarly, a primary goal in interpreting an insurance policy is to ascertain and carry out the intentions of the parties to the contract. *See City of Edgerton v. General Cas. Co. of Wis.*, 184 Wis. 2d 750, 780, 517 N.W.2d 463 (1994). We should give the language of an insurance policy its plain and ordinary meaning. *See id.* When we construe the words of an ambiguous insurance policy, we base our construction on a reasonable insured's expectations of coverage rather than on what the insurer intended the words to mean. *See id.*; *Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156 (1984). However, when the policy provisions are unambiguous, "we will not engage in construction, but will merely apply the policy terms." *Kremers-Urban*, 119 Wis. 2d at 736. A policy provision is ambiguous if it is susceptible to more than one reasonable construction. *See Cardinal v. Leader Nat'l Ins. Co.*, 166 Wis. 2d 375, 383, 480 N.W.2d 1 (1992).

██

¶ 10. We conclude that the trial court correctly determined that Farmers was not liable to the Beerbohms. James's policy unambiguously excludes coverage for liability arising from the ownership, maintenance or use of a motorcycle. In Part I, the policy states that Farmers will pay for bodily injury or property damages "arising out of the ownership, maintenance or use of a private passenger car, a utility car, or a utility trailer." The policy's definitions of "private passenger car" and "utility car" do not include vehicles with less than four wheels. In addition, the "Exclusions" section of Part I clearly provides that liability coverage does not apply to "[b]odily injury or property damage arising out of the ownership, mainte-

nance or use of any motorized vehicle with less than four wheels." A reasonable insured, having read these provisions, would not conclude that he or she had purchased coverage for motorcycles.

¶ 11. We do not agree that WIS. STAT. § 632.32 requires automobile insurance policies to provide coverage for motorcycles. Chapter 632 of the Wisconsin Statutes regulates the provisions found in any insurance policy issued or delivered in Wisconsin. *See Classified Ins. Co. v. Budget Rent-A-Car of Wis., Inc.*, 186 Wis. 2d 478, 483, 521 N.W.2d 177 (Ct. App. 1994). However, § 632.32(5)(e) provides that an automobile policy "may provide for exclusions not prohibited by sub. (6) or other applicable law." Section 632.32(6) does not prohibit policy provisions excluding motorcycle coverage.[3]

---

[3] WISCONSIN STAT. § 632.32(6) provides:

PROHIBITED PROVISIONS. (a) No policy issued to a motor vehicle handler may exclude coverage upon any of its officers, agents or employes when any of them are using motor vehicles owned by customers doing business with the motor vehicle handler.

(b) No policy may exclude from the coverage afforded or benefits provided:

1. Persons related by blood or marriage to the insured.

2. a. Any person who is a named insured or passenger in or on the insured vehicle, with respect to bodily injury, sickness or disease, including death resulting therefrom, to that person.

b. This subdivision, as it relates to passengers, does not apply to a policy of insurance for a motorcycle as defined in s. 340.01 (32) or a moped as defined in s. 340.01 (29m) if the motorcycle or moped is designed to carry only one person and does not have a seat for any passenger.

3. Any person while using the motor vehicle, solely for reasons of age, if the person is of an age authorized to drive a motor vehicle.

4. Any use of the motor vehicle for unlawful purposes, or for transportation of liquor in violation of law, or while the driver is

¶ 12. We also do not agree that WIS. STAT. § 344.33 applies to the insurance policy in this case. While Chapter 632 of the Wisconsin Statutes regulates provisions of insurance policies issued or delivered in Wisconsin, Chapter 344, comprising the financial responsibility laws, "regulates the owners and operators of motor vehicles who are involved in accidents in Wisconsin." *Classified*, 186 Wis. 2d at 483. The financial responsibility laws are generally divided into two parts. *See Keane v. Auto-Owners Ins. Co.*, 159 Wis. 2d 539, 551–53, 464 N.W.2d 830 (1991). The first part, "Security for Past Accidents," encompasses WIS. STAT. §§ 344.12 to 344.22. Section 344.33 falls within the second part of the financial responsibility laws, "Proof of Financial Responsibility for The Future." *See* WIS. STAT. §§ 344.24 to 344.42. Under these statutes, "drivers whose licenses have been revoked because of their poor driving records are required to show proof of financial responsibility to have their operators licenses reinstated." *Cardinal*, 166 Wis. 2d at 381. Drivers can meet this requirement by providing certification that they have obtained liability insurance that meets the requirements of § 344.33. *See id.*

¶ 13. Unlike WIS. STAT. § 632.32, the requirements of WIS. STAT. § 344.33 do not apply to every automobile insurance policy issued in Wisconsin. As

under the influence of an intoxicant or a controlled substance or controlled substance analog under ch. 961 or a combination thereof, under the influence of any other drug to a degree which renders him or her incapable of safely driving, or under the combined influence of an intoxicant and any other drug to a degree which renders him or her incapable of safely driving, or any use of the motor vehicle in a reckless manner. In this subdivision, "drug" has the meaning specified in s. 450.01 (10).

 (c) No policy may limit the time for giving notice of any accident or casualty covered by the policy to less than 20 days.

the Beerbohms point out, § 344.33(2) requires that a "motor vehicle liability policy" "shall insure the person named therein using any motor vehicle with the express or implied permission of the owner." However, under § 344.33(1), a "motor vehicle liability policy" is defined as "a motor vehicle policy of liability insurance, certified as provided in s. 344.31 or 344.32 as proof of financial responsibility for the future." There is no evidence that the policy in this case was used as proof of financial responsibility in order to have James's or Matthew's drivers licenses reinstated. Thus, the requirements of § 344.33(2) are inapplicable.

¶ 14. The Beerbohms assert that, in *Keane*, the supreme court held that an automobile liability policy must comply with WIS. STAT. § 344.33 even when the insured is not otherwise subject to the financial responsibility laws. In particular, the Beerbohms point out that the supreme court stated in *Keane*, "[o]urs is not a compulsory insurance state. But for policies issued, Chapter 632, Subchapter IV, of the Wisconsin Statutes governs automobile and motor vehicle insurance policy requirements; and '[i]n Wisconsin, liability coverage currently cannot be issued for less than $25,000. Section 344.33.' " *Keane*, 159 Wis. 2d at 554 (quoting *Wood v. American Family Mut. Ins. Co.*, 148 Wis. 2d 639, 653, 436 N.W.2d 594 (1989), *overruled on other grounds by Matthiesen v. Continental Cas. Co.*, 193 Wis. 2d 192, 532 N.W.2d 729 (1995)).

¶ 15. In *Keane*, a Wisconsin driver was killed in an accident with a driver carrying automobile insurance issued in Michigan. *Id.* at 541–42. The Michigan driver's insurance had a $20,000 bodily injury liability limit and the Keanes argued that they were entitled to uninsured motorist coverage because their policy defined an uninsured vehicle as one with a bodily

injury liability limit of less than the $25,000 required by Wisconsin's financial responsibility laws. *See id.* However, the Michigan driver's policy also contained an extraterritorial clause stating that the bodily injury liability insurance provided "shall comply with the provisions of the motor vehicle financial responsibility law of any state or province to the extent of the coverage and limits of liability required by such law." *Id.* at 542–43. The supreme court concluded that this clause increased the Michigan driver's liability limit to the amount required by Wisconsin's financial responsibility laws and, therefore, he was not uninsured. *See id.* at 543.

¶ 16. For two reasons, *Keane* does not support the Beerbohms' assertion that all automobile insurance policies must comply with WIS. STAT. § 344.33. First, the supreme court concluded that the Michigan driver's policy had to comply with the "Security for Past Accidents" part of the financial responsibility laws, not the "Proof of Financial Responsibility for the Future" part. *See id.* at 553. The court determined that the policy limit was increased to $25,000 based on WIS. STAT. § 344.15, not § 344.33. *See id.* Therefore, the court's statement that Wisconsin liability coverage cannot be issued for less than $25,000 based on § 344.33 was dicta. It does not support the Beerbohms' contention that the requirement in § 344.33(2) that a "motor vehicle liability policy" must provide the insured with coverage for the use of "any motor vehicle" applies to all insurance policies in Wisconsin.

¶ 17. Second, in *Keane*, the court applied the terms of the Michigan policy's extraterritorial clause. *Id.* at 547. As the court explained, the clause required that "the policy must meet the coverage and limits of liability required by Wisconsin's financial responsibil-

ity law." *Id.* at 551. The Michigan insurance policy had to comply with Wisconsin's financial responsibility laws because of its own language, not because the financial responsibility laws themselves required compliance. In this case, James's policy does not have language requiring compliance with WIS. STAT. § 344.33 and we do not agree that *Keane* requires compliance.

¶ 18. The Beerbohms also argue that an insurance contract should be construed based on a reasonable insured's expectations. They contend that James had a reasonable expectation that his policy would protect him in the event of any accident involving a family member, especially if he did not know that Matthew had purchased a motorcycle. We disagree. We have already concluded that James's policy unambiguously excluded coverage for the use of a motorcycle. It would not be reasonable for James to expect anything to the contrary. "[W]hen the terms of a policy are plain on their face, such policy should not be rewritten by construction to bind an insurer to a risk which it did not contemplate, or a risk it was unwilling to cover, and for which it was not paid." *Limpert v. Smith*, 56 Wis. 2d 632, 640, 203 N.W.2d 29 (1973).

¶ 19. In addition, the Beerbohms contend that there are significant policy reasons that automobile liability insurers should not be allowed to exclude coverage for motorcycles. However, we are primarily an error-correcting court and we decline to alter our conclusions in this case based on policy arguments. *See Deegan v. Jefferson County*, 188 Wis. 2d 544, 559, 525 N.W.2d 149 (Ct. App. 1994).

## B. *Sponsorship Statute*

¶ 20. The Beerbohms assert that although James withdrew his sponsorship of Matthew's license, he remained liable under the sponsorship statute, WIS. STAT. § 343.15(2)(b), because Matthew's mother sponsored the license. The Beerbohms contend that, under *Klatt v. Zera*, 11 Wis. 2d 415, 105 N.W.2d 776 (1960), Farmers' general grant of coverage to James for automobile liability extends to cover liability for Travis Beerbohm's injuries in this case by virtue of the sponsorship statute.

¶ 21. We agree that James is liable under the sponsorship statute. WIS. STAT. § 343.15(2)(b) provides:

> Any negligence or wilful misconduct of a person under the age of 18 years when operating a motor vehicle upon the highways is imputed to the parents where both have custody and either parent signed as sponsor, otherwise, it is imputed to the adult sponsor who signed the application for such person's license. The parents or the adult sponsor is jointly and severally liable with such operator for any damages caused by such negligent or wilful misconduct.

Both of Matthew's parents are liable because they both have custody and one signed as a sponsor. It does not matter that James withdrew sponsorship because Matthew's mother signed the documents which made her a sponsor.

¶ 22. However, we do not agree that the fact that James is liable under the sponsorship statute means that Farmers must extend coverage for injuries caused by the use of a motorcycle, when such coverage is contrary to the clear language of its policy. In *Klatt*, John Lang sponsored his son Jerome's drivers license. *Klatt,*

11 Wis. 2d at 417. Although John carried automobile insurance for his own car, Jerome got into an accident while driving a car owned by another. *See id.* at 418. John's policy provided coverage for "all sums for which the insured shall become legally obligated to pay" caused by an accident "and arising out of the ownership, maintenance, or use" of the covered automobile. *Id.* The policy also had a "Use of Other Automobiles" clause, providing that the coverage provided for the car named in the policy "applies with respect to any other automobile." *Id.* at 418–19. The supreme court held that liability for Jerome's accident was imputed to John under the sponsorship statute. *See id.* at 422. It concluded that the policy covered John for this liability because the policy contained no language restricting who must be the operator of the other vehicle for the "Use of Other Automobiles" clause to apply. *See id.* at 422–23. Finally, the court concluded that the policy's exclusion of coverage for liability assumed by contract or agreement did not apply to liability imposed by the sponsorship statute. *See id.* at 424.

¶ 23. The supreme court's holding in *Klatt* does not support the Beerbohms' argument. In *Klatt*, the policy did not contain any language excluding coverage for the type of accident in which Jerome was involved. The policy provided coverage to John since he was liable for the damages Jerome caused under the sponsorship statute. In contrast, the language of James's policy in this case clearly excludes coverage for liability arising from the use of a motorcycle, whether that liability arises under the sponsorship statute or otherwise.

## C. *Newly-Acquired Automobile Clause*

¶ 24. The Beerbohms argue that Matthew's motorcycle was covered under the newly-acquired vehicle clause of James's policy. We disagree. In its general definitions section, the policy provided:

> Your insured car means:
>
> . . . .
>
> 2. Any additional private passenger car or utility car of which you acquire ownership during the policy period provided that:
>
> a. You notify us within 30 days of its acquisition.

The Beerbohms contend that the motorcycle was covered under this clause because Matthew bought it less than thirty days before the accident. However, even if it was newly acquired, a motorcycle does not meet the policy's definition of a private passenger car or utility car.

*By the Court.*—Judgment affirmed.