AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
Plaintiff-Respondent,

v.

Janey BATEMAN and Chelsea Collar, Defendants,

Cassandra BOLLIG, Defendant-Appellant.

Court of Appeals

*No. 2005AP2219. Submitted on briefs August 8, 2006.
—Decided November 22, 2006.*

2006 WI App 251

(Also reported in 726 N.W.2d 678.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael W. Gill*, of *Hale, Skemp, Hanson, Skemp & Sleik*, La Crosse.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Scott G. Pernitz* and *Laure Rakvic-Farr* of *Winner, Wixson & Pernitz*, Madison.

Before Dykman, Vergeront and Deininger, JJ.

¶ 1. VERGERONT, J. The issues on this appeal concern the coverage under two automobile liability insurance policies for an accident in which the named insured's daughter was driving a car that collided with another car. The circuit court granted summary judgment in favor of the insurer, American Family Mutual Insurance Company, concluding that neither policy provided coverage for the accident. The driver of the other car appeals. We conclude that, based on the undisputed facts, the car the named insured's daughter was driving did not meet the definition of "your insured car" in one of the policies and the known loss doctrine precludes coverage under the other policy. We therefore affirm.

## BACKGROUND

¶ 2. The accident occurred on May 10, 2003, when Janey Bateman's sixteen-year-old daughter, Chelsea, was driving a 1989 Oldsmobile that Bateman

831

had obtained for her. Chelsea drove the car out of a parking lot and collided in the street with a car driven by Cassandra Bollig.

¶ 3. Bateman had purchased the Oldsmobile from her sister in February 2003. On February 26, 2003, Bateman registered the car with the State of Wisconsin, identifying Chelsea as the owner; Bateman signed as the sponsor. On the same day, Bateman picked up the Oldsmobile at her mother's house and drove it twenty-seven miles back to her house, where it remained for approximately two weeks, without being driven by anyone. In early March, Bateman's friend picked up the Oldsmobile so that an acquaintance could make repairs to it; they returned the car to Bateman on May 9. On May 10, Chelsea took the car from the driveway without her mother's knowledge or permission.

¶ 4. At the time of the accident, Bateman was the named insured on an American Family automobile insurance policy that listed her 1993 Mercury Villager on the declarations page. On April 18, 2003, Bateman called the office of an American Family agent to add Chelsea, as an occasional driver, to this policy. This policy excludes coverage for liability for bodily injury or property damage "arising out of the use of any vehicle, other than your insured car, which is owned by or furnished by or available for regular use by you or any resident of your household." "Insured car" is defined in the policy as:

a. Any car described in the declarations and any private passenger car or utility car you replace it with. You must tell us within 30 days of its acquisition.

832

b. Any additional private passenger car or utility car of which you acquire ownership during the policy period, provided:

 1) If it is a private passenger car, we insure all of your other private passenger cars; or

 2) If it is a utility car, we insure all of your other private passenger cars and utility cars.

You must tell us within 30 days of its acquisition that you want us to insure the additional car. . . .

¶ 5. Bateman told the agent in the April 18 conversation that when her daughter had her own car, she (Bateman) would let the agent know so that that car could be insured. As of May 10, 2003, the date of the accident, Bateman had not contacted the American Family agent to request insurance on the Oldsmobile.

¶ 6. After the accident, on May 15, 2003, Bateman called the agent to request insurance coverage for the Oldsmobile. Certain portions of this conversation are disputed by the parties, but it is undisputed that Bateman did not mention the accident and that, based on this conversation, American Family issued a policy covering the Oldsmobile that was retroactive to May 9, 2003, with Bateman as the named insured.

¶ 7. When American Family later learned of the accident, it filed this action asking for a declaratory ruling that the Mercury policy did not provide liability coverage for the accident and the Oldsmobile policy was void for misrepresentation and fraudulent concealment. Bateman and Chelsea did not answer the complaint and American Family subsequently moved for a default judgment against them, which they did not oppose. The court therefore entered judgment against Bateman and Chelsea declaring that the Mer-

cury policy did not require American Family to either defend or indemnify Bateman or Chelsea in connection with the accident; the judgment further declared that the Oldsmobile policy was void for misrepresentation.[1]

¶ 8. Bollig answered the complaint and asserted a counterclaim against American Family and a cross-claim against Bateman and Chelsea. Bollig alleged that Chelsea was negligent, Bateman was liable for her negligence, and either one or both of the American Family policies provided coverage for their liability. Bateman and Chelsea answered the cross-claim, denying negligence and liability.

¶ 9. On American Family's motion, the court bifurcated litigation of the insurance coverage issues, on the one hand, and Bollig's cross-claim and counterclaim, on the other hand. American Family moved for summary judgment on the coverage issues. With respect to the Mercury policy, American Family argued that the Oldsmobile was not an insured car because Bateman did not tell American Family within thirty days of its acquisition in February 2003 that she wanted American Family to insure it. Thus, American Family argued, even if Bateman has sponsorship liability under WIS. STAT. § 343.15[2] for Chelsea's negligence,

---

[1] It appears from the record that Bollig did not object to the entry of this judgment. American Family refers to this judgment in its brief on appeal, but does not argue that the judgment precludes Bollig from pursuing her position that there is coverage for the accident under the two policies. Therefore, we do not consider the effect of this judgment on Bollig's appeal.

[2] WISCONSIN STAT. § 343.15(1)(a) and (2)(b) provide as follows:

the terms of the policy control its coverage obligation, and there is no coverage under the policy for the accident.

¶ 10. With respect to the Oldsmobile policy, American Family submitted the affidavit of its agent. The agent averred that in the May 15 conversation with Bateman, the agent asked Bateman whether there had been any claims, accidents, or problems with the Oldsmobile and Bateman answered no and did not mention the accident. American Family also submitted Bateman's deposition in which Bateman stated that, on the advice of a friend, she asked the agent to backdate the insurance to May 9 so that it would cover the accident, and she did not mention the accident; she now knows she should not have done that. She acknowledged that her purpose was to get insurance that would predate the accident that had already occurred. American Family argued that the policy was void because of Bateman's misrepresentation and it was entitled to rescind or void the policy

(1)(a) Except as provided in sub. (4), the application of any person under 18 years of age for a license shall be signed and verified by either of the applicant's parents, or a stepparent of the applicant or other adult sponsor, as defined by the department by rule . . . .

. . . .

(2)(b) Any negligence or willful misconduct of a person under the age of 18 years when operating a motor vehicle upon the highways is imputed to the parents where both have custody and either parent signed as sponsor, otherwise, it is imputed to the adult sponsor who signed the application for such person's license. The parents or the adult sponsor is jointly and severally liable with such operator for any damages caused by such negligent or willful misconduct.

All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

835

under Wis. Stat. § 631.11(1)(b),[3] common law and the "Concealment or Fraud" provision of the policy.[4]

¶ 11. Bollig opposed the motion for summary judgment. Regarding the Mercury policy, Bollig argued that Bateman did not acquire the Oldsmobile until May 9 when it was returned to her after being repaired, and that because Bateman told the agent about it on May 15—within thirty days—it automatically became an

---

[3] WISCONSIN STAT. § 631.11(1)(b) provides:

(1) EFFECT OF NEGOTIATIONS FOR CONTRACT.

. . . .

(b) *Misrepresentation or breach of affirmative warranty.* No misrepresentation, and no breach of an affirmative warranty, that is made by a person other than the insurer or an agent of the insurer in the negotiation for or procurement of an insurance contract constitutes grounds for rescission of, or affects the insurer's obligations under, the policy unless, if a misrepresentation, the person knew or should have known that the representation was false, and unless any of the following applies:

1. The insurer relies on the misrepresentation or affirmative warranty and the misrepresentation or affirmative warranty is either material or made with intent to deceive.

2. The fact misrepresented or falsely warranted contributes to the loss.

[4] The "Concealment or Fraud" provision provides as follows:

10. Concealment or Fraud. We can void this policy if you or any person claiming coverage under this policy misrepresents a material fact with intent to deceive, or breaches an affirmative warranty, and:

a. We rely upon such misrepresentation or breach; or

b. Such misrepresentation or breach contributes to the loss.

This provision does not apply to thirty party coverage claims under any of the provided coverages.

"insured car" under the Mercury policy. Bollig submitted factual materials showing that the Oldsmobile was not safe to operate on the road from the time it was picked up for repairs in March until May 9 and also showing that, while it was being repaired, it was in a disassembled and unusable state.

¶ 12. Regarding the Oldsmobile policy, Bollig argued there were disputed issues of fact. Bollig pointed to other portions of Bateman's deposition where Bateman testified that, a few days after the accident, Bollig's lawyer called her to ask the name of her insurance company; when Bateman said she did not have insurance on the Oldsmobile, he told her that she had thirty days to put that car on her policy. Bateman denied in her deposition that in the May 15 conversation the agent asked if the car had any prior claims; instead, she stated, the agent asked whether "there [was] anything wrong with the vehicle" and she said no. Bollig argued that, because Bateman had been told by an attorney that she could add the Oldsmobile to her policy within thirty days, it is reasonable to infer that she believed it would be covered regardless of whether there had been an accident. And, Bollig contended, if it was true, as Bateman testified, that the agent did not ask about claims on that car, then Bateman did not misrepresent.

¶ 13. The circuit court concluded that, based on the undisputed facts, Bateman acquired the vehicle in February 2006, and did not tell American Family she wanted insurance on it within thirty days. Therefore, the court concluded, the Mercury policy did not provide coverage for the accident and it followed that the policy did not provide coverage for Bateman's sponsorship liability. With respect to the Oldsmobile policy, the court determined that, although there was a dispute over whether the agent had asked Bateman in the May 15

conversation whether there had been any accidents, there was no material factual dispute that Bateman had concealed the accident. The court acknowledged that the record did not show that American Family had not complied with the notice procedures in Wis. Stat. § 631.11(4)(b).[5] However, the court stated, "with that proviso" it was also granting summary judgment in favor of American Family with respect to the Oldsmobile policy.

## DISCUSSION

¶ 14. On appeal, Bollig challenges the circuit court's grant of summary judgment as to both policies. We review de novo the grant and denial of summary judgment, employing the same methodology as the circuit court. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–17, 401 N.W.2d 816 (1987). Summary judgment is proper when there are no issues of material fact and one party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2).

---

[5] Wisconsin Stat. § 631.11(4)(b) provides:

(4) Effect of insurer's knowledge.

. . . .

(b) *Knowledge acquired after policy issued.* If after issuance of an insurance policy an insurer acquires knowledge of sufficient facts to constitute grounds for rescission of the policy under this section or a general defense to all claims under the policy, the insurer may not rescind the policy and the defense is not available unless the insurer notifies the insured within 60 days after acquiring such knowledge of its intention to either rescind the policy or defend against a claim if one should arise, or within 120 days if the insurer determines that it is necessary to secure additional medical information.

I. Mercury Policy

A. Automatic Insurance Clause

¶ 15. The Mercury policy excludes coverage for liability arising out of the use of any vehicle other than "your [Bateman's] insured car" which is "owned by or furnished or available for regular use" by Bateman or a resident of her household. According to the definition of "your insured car," the Oldsmobile would be an insured car if Bateman "acquired ownership [of it] during the policy period" and told American Family "within 30 days of its acquisition" that she wanted American Family to insure it. If these conditions were met, then there would be coverage if an accident occurred during that thirty-day time period, even if the accident occurred before the notification, *Offerdahl v. Glasser*, 5 Wis. 2d 498, 500–02, 98 N.W.2d 362 (1958), and even if the notification occurred after the thirty days. *Auto-Owners Ins. Co. v. Rasmus*, 222 Wis. 2d 342, 353–54, 58 N.W.2d 49 (Ct. App. 1998). This provision is sometimes known as an "automatic insurance clause." *See Offerdahl*, 5 Wis. 2d at 499; *Auto-Owners*, 222 Wis. 2d at 346.

¶ 16. Bollig contends that the circuit court erroneously construed this automatic insurance clause to require notice to American Family within thirty days of "acquiring ownership" of an additional car. The correct construction, she asserts, is that notice is required within thirty days of physically acquiring the additional car, and that means an operable car. In the alternative, Bollig asserts that the provision is ambiguous on this point and must be construed in the insured's favor. Bollig's position is that the Oldsmobile was not operable until May 9 and therefore Bateman's notification to American Family on May 15 that she wanted insurance

on the car was within thirty days of her "acquisition" of it; accordingly, the accident on May 10 was covered. Bollig asserts it is undisputed that the Oldsmobile was not operable until May 9. In the alternative, she argues that, if there are disputed facts on the car's operability, she is entitled to a trial on this issue.

¶ 17. The interpretation of an insurance contract is a question of law subject to de novo review. *Danbeck v. American Family Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150. We interpret an insurance policy as a reasonable person in the position of the insured would understand it. *Id.* Where the language of the policy is plain and unambiguous, we enforce it as written. *Id.* If the language is ambiguous, that is, susceptible to more than one reasonable interpretation, we construe it in favor of coverage. *Id.* Whether the language of an insurance policy is plain or ambiguous is a question of law, which we review de novo. *See Kraemer Bros., Inc. v. United States Fire Ins. Co.*, 89 Wis. 2d 555, 561–62, 278 N.W.2d 857 (1979).

¶ 18. We will assume, without deciding, that a reasonable insured could understand that "acquisition" in the phrase "within 30 days of its acquisition" means physical acquisition of the car rather than simply acquisition of ownership. It is undisputed that, after Bateman acquired ownership of the Oldsmobile in February 2003, she drove it on February 26, 2003, the twenty-seven miles from her mother's home to her home, and that about two weeks later she drove elsewhere for repairs. A reasonable insured would understand that Bateman had acquired the Oldsmobile when she drove it to her home. Plainly, if Bateman had been in an accident while driving the Oldsmobile to her home from her mother's, she would have had the reasonable

expectation that, if she told American Family then that she wanted insurance on the car, the Oldsmobile would be an "insured car" within the policy definition and that accident would have been covered.

¶ 19. Bollig's argument that a car is not acquired until it is in an operable condition and the Oldsmobile was not operable is based primarily on *State Farm Mut. Ins. Co. v. Rechek*, 125 Wis. 2d 7, 370 N.W.2d 787 (Ct. App. 1985).[6] That case addressed an insurance policy provision that excluded coverage for relatives of the insured in the household if they owned a "private passenger automobile." *Id.* at 8. The relative in that case owned two cars that the circuit court found were in such an inoperable state they could no longer be considered "automobiles." *Id.* at 9. We agreed that at some point a "vehicle may reach such a condition that it is no longer considered an automobile designed for use on the public highways." *Id.* at 11. We adopted the analysis of *Quick v. Michigan Millers Mut. Ins. Co.*, 250 N.E.2d 819 (Ill. App. Ct. 1969), identifying the following factors as typically relevant to determining whether a vehicle had reached such a state: (1) degree of disrepair; (2) intent of the owner and/or; (3) whether the inoperable condition is temporary. *Rechek*, 125 Wis. 2d at 11 (quoting *Quick*, 250 N.E.2d at 821). With regard to this last factor, the *Quick* court concluded a vehicle was not an automobile for purposes of a similar policy provision when the inoperable condition was "probably permanent, or apt to be of long duration with little reasonable possibility of restoring the car to a condition where it could be driven on the road." *Id.*

---

[6] Bollig also cites to *Glens Falls Ins. Co. v. Gray*, 386 F.2d 520 (5th Cir. 1967), a case decided under Florida law. We confine our discussion to Wisconsin cases.

¶ 20. *Rechek* does not support Bollig's position. It is undisputed that Bateman did drive the Oldsmobile back to her house, and it is also undisputed that she purchased it so that her daughter could drive it and that she intended that, after the repairs, it would be able to be driven regularly and safely by her daughter. Thus, assuming the factors identified in *Rechek* are relevant to the issue of when a car is "acquired" for purposes of an automatic insurance clause, their application to the undisputed facts here results in the conclusion that Bateman acquired the Oldsmobile at least by February 26, 2003.

¶ 21. Moreover, we have already rejected an argument based on *Rechek* that is very similar to the one Bollig makes here. In *Meridian Mut. Ins. Co. v. Smith*, 221 Wis. 2d 759, 761, 585 N.W.2d 837 (Ct. App. 1998), we addressed an automatic insurance clause that, like this, required that an insured auto be acquired during the policy period. The insured there purchased a 1984 truck and drove it to his farm before obtaining insurance on two other vehicles that he owned. *Id.* When one of the insured vehicles developed problems, he repaired the 1984 truck and shortly thereafter had an accident while driving it. *Id.* at 761–62. The insurance company took the position that the insured had "acquired" the 1984 truck before the policy period, while the insured argued that he did not "acquire" it until it was fully operable and usable on the public highway and that he did not acquire it until he repaired it, which was during the policy period. *Id.* at 764–65. The insured asserted that the court should consider the three factors identified in *Rechek*; he also asserted that he never intended to drive the 1984 truck, but intended to use it for parts, and he ended up driving it only because another vehicle became unexpectedly inoperable. *Id.* at 764–65. We

rejected the insured's argument because, we stated, "[w]hen [the insured] purchased and took possession of the truck ... he drove it home on public roads. The intended use or condition of the truck once he got it home does not control our analysis. At the time of his purchase, he acquired an operational vehicle." *Id.* at 765.

¶ 22. Bollig argues that our reasoning in *Meridian* is not applicable here because in that case we were deciding whether the insured acquired the vehicle within the policy period and here the issue is whether Bateman notified American Family within thirty days of acquiring the Oldsmobile. While that is true, Bollig does not explain why that distinction makes our reasoning in *Meridian* inapplicable. We conclude that same reasoning applies here. Because Bateman purchased and drove the Oldsmobile home on February 26, she acquired an operational vehicle on that date. Neither her intent to have it repaired, nor its inoperability while being repaired, alters the fact that she had already acquired the Oldsmobile.

¶ 23. We conclude that, based on the undisputed facts, the Oldsmobile does not come within the definition of "your insured car" in the Mercury policy. Therefore, because it was "owned by or furnished or available for regular use" by the insured—Bateman—or by a member of her household—Chelsea—it was excluded from coverage.

B. Sponsorship Liability

¶ 24. Bollig argues that Bateman's liability as Chelsea's sponsor under Wis. Stat. § 343.15 is covered

843

by the Mercury policy. However, in *Beerbohm v. State Farm Mut. Auto Ins. Co.*, 2000 WI App 105, ¶ 23, 235 Wis. 2d 182, 612 N.W.2d 338, we held that, because that policy clearly excluded coverage for motorcycles, there was no coverage for the insured's liability—whether under the sponsorship statute or otherwise—arising out of his son's use of his motorcycle. Other than attempting to distinguish *Beerbohm* on the ground that it concerned a motorcycle, Bollig does not explain how there can be coverage for Bateman's sponsorship liability if coverage for the Oldsmobile is excluded, and she does not reply to American Family's assertion that under *Beerbohm* there is no coverage for Bateman's sponsorship liability if coverage for the Oldsmobile is excluded. We take this as a concession that American Family is correct on this point. *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (we may treat a failure to refute a proposition in a reply brief as a concession).

¶ 25. Because we have concluded that the Oldsmobile does not come within the definition of "your insured auto" and is therefore excluded under the Mercury policy, there is no coverage for Bateman's liability for the collision involving that car—under the sponsorship statute or otherwise.

## II. The Oldsmobile Policy—the Known Loss Doctrine

¶ 26. The known loss doctrine is a common law defense to insurance coverage according to which " 'insurers are not obligated to cover losses that are already occurring when the coverage is written or [that] have already occurred.' " *State v. Hydrite Chemical Co.*, 2005

WI App 60, ¶ 20, 280 Wis. 2d 647, 695 N.W.2d 816 (quoting *American Family Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶ 86, 268 Wis. 2d 16, 673 N.W.2d 65). We asked for supplemental briefing on the question whether this doctrine applies to preclude coverage for the accident under the Oldsmobile policy. We conclude that this doctrine does apply and that, based on the undisputed facts, it precludes coverage.[7]

¶ 27. The undisputed facts are: the accident had already occurred when Bateman contacted the American Family agent on May 15, 2003, to obtain coverage on the Oldsmobile; Bateman knew of the accident at that time; she knew that the driver of the other vehicle had contacted a lawyer, who had contacted her and asked if she had insurance; she asked to have the insurance backdated to May 9 so that it would cover the accident; and she did not mention the accident to the agent.

¶ 28. Bollig argues that, nonetheless, the known loss doctrine does not apply because there is no evidence showing Bateman knew she had liability for the accident. Under *Hydrite*, Bollig asserts, Bateman's

---

[7] Bollig asserts in her supplemental brief that we should not consider the known loss doctrine because American Family did not raise it as a defense in the circuit court. A respondent may advance for the first time on appeal, and we may consider, any basis for sustaining the trial court's order or judgment. *State v. Darcy N.K.*, 218 Wis. 2d 640, 651, 581 N.W.2d 567 (Ct. App. 1998). We also have the authority to raise issues sua sponte, *Bartus v. DHSS*, 176 Wis. 2d 1063, 1070–71, 501 N.W.2d 419 (1993), and we have given the parties the opportunity to brief the issue we have raised sua sponte. *See id.* at 1073 (supreme court declined to impose rule that this court must allow supplemental briefing when it raises an issue sua sponte but emphasizes the benefits of doing so). We are satisfied that it is appropriate to consider the known loss doctrine even though American Family did not raise it in the circuit court.

knowledge of her liability, not simply knowledge of the accident, is required in order for the known loss doctrine to be applicable.

¶ 29. In *Hydrite*, 280 Wis. 2d 647, ¶ 28, we concluded, based on our reading of *American Girl*, that

> in order for the known loss doctrine to apply under a CGL [commercial general liability] policy, the insured must know more than the fact that there has been an occurrence that has caused damage to the property of a third party; the insured must also know that it is substantially probable that the insured will be liable for the damage.

We also concluded that under *American Girl* it was not necessary for the insured to know the extent of the insured's liability in order for the known loss doctrine to apply. *Id.*, ¶ 29. We held that, for the known loss doctrine to apply to bar coverage under an excess CGL policy, "the insured must know when it obtains the insurance that there is a substantial probability that it is liable for damage to the property of a third party in an amount that will reach the excess layer." *Id.*, ¶ 36.

¶ 30. Bollig reads *Hydrite* and *American Girl* to support the proposition that, in order for the known loss doctrine to apply to automobile liability insurance, the insured must know at the time he or she obtains the insurance that the insured, or someone for whom the insured is legally responsible, has in fact been negligent in the accident that has already occurred and must know that the negligence has caused injuries or property damage.

¶ 31. Both *American Girl* and *Hydrite* involved damage to the property of a third party in circumstances where knowledge of the damage does not necessarily convey to the insured knowledge that the

insured might have any liability for it: in *American Girl*, 268 Wis. 2d 16, ¶¶ 13–14, the settling of soil under a building caused damage to the building, and in *Hydrite*, 280 Wis. 2d 647, ¶ 2, there was contamination of groundwater. We agree with American Family that the situation of a two-car collision, such as occurred here, does not present the same complex issues of the relationship between the nature and extent of damages and liability. Bateman knew that her daughter had been in a car accident, she knew she was legally responsible for any negligence by her daughter that caused property damage to the other vehicle or injury to the other driver, and she knew the other driver had retained a lawyer to attempt to recover from her. We conclude that neither *American Girl* nor *Hydrite* resolves the question whether, in order for the known loss doctrine to apply, Bateman had to know her daughter was negligent and know her daughter's negligence caused property damage or injury.

¶ 32. In order to resolve this question, we consider, as we did in *Hydrite*, the public policies underlying the known loss doctrine: one is a recognition of the essential characteristic of insurance—that it covers risks, not certainties—and the other is to prevent insureds from benefiting when they wrongfully withhold material information from insurers in order to obtain insurance. *See id.*, ¶¶ 23, 34. We conclude that the first policy requires application of the known loss doctrine based on the undisputed facts in this case. At the time Bateman obtained insurance on the Oldsmobile, it was certain that her daughter had been in a collision with another car and the other driver was attempting to recover damages from Bateman or her daughter; there was simply no risk to insure with

respect to that accident.[8] Because we are persuaded that the known loss doctrine applies for this reason, we do not decide whether its application furthers the public policy of fraud prevention.

¶ 33. It is also unnecessary for us to decide any factual disputes concerning Bateman's intent. Specifically, Bollig contends that the following disputes exist on the present record: whether Bateman believed that, as Bollig's lawyer told her, she had thirty days from the date the Oldsmobile was returned to her on May 9 to obtain coverage for it; whether she was asked, as the agent testified and Bateman denied, if there were any accidents or claims regarding the Oldsmobile; whether Bateman made a misrepresentation and, if she did, whether it was intentional. These questions are not relevant to whether Bateman knew that her daughter had been in an accident with the Oldsmobile at the time she sought coverage for that accident.

¶ 34. Bollig also argues that the known loss doctrine does not "supersede" the requirements of Wis. Stat. § 631.11(1)(b), which defines when a "misrepresentation" may be "grounds for rescission of, or af-

---

[8] For clarification, we explain why the known loss doctrine does not apply to coverage under the Mercury policy. The automatic coverage provision in the Mercury policy can, depending on the circumstances, cover an accident with an acquired car when the accident has already occurred at the time the insured notifies the company of the car's acquisition. However, at the time Bateman obtained the Mercury policy—which is the relevant time period for determining whether the known loss doctrine applies to that policy—it was not certain that she would acquire another car that would meet the policy definition and would be involved in an accident within the requisite time period. Thus, there was a risk to insure, one which American Family agreed to insure by issuing a policy with the thirty-day notice provision for newly acquired vehicles.

fect . . . the insurer's obligations under the contract." We understand her to be making the same argument regarding § 631.11(4)(b), which requires notice to the insured within sixty days of the insurer's acquiring knowledge of facts that are sufficient "to constitute grounds for rescission under [§ 631.11] or a general defense to all claims under the policy" in order for the insurer to rescind the policy or raise that defense. We do not agree that these provisions of § 631.11(4)(b) prevent application of the known loss doctrine for the following reasons.

■■■

¶ 35. First, the known loss doctrine differs in significant ways from the misrepresentation defense addressed in WIS. STAT. § 631.11(1)(b) and (4)(b). The known loss doctrine does not result in rescission of a policy or create a general defense to all claims. Instead, the result of its application is that a specific known loss is not covered: the policy remains in effect and other claims are not affected. In addition, while an insured may have made a misrepresentation about a known loss, that is not a requirement of the doctrine as it has been applied in *American Girl* and *Hydrite*.

¶ 36. Second, and more importantly, the supreme court applied the known loss doctrine in *American Girl*, not WIS. STAT. § 631.11, even though the current version of the statute was in effect at the time. The court's decision to apply the known loss doctrine in that case is irreconcilable with Bollig's position. Moreover, the concurrence in *Hydrite*, 280 Wis. 2d 647, ¶ 41 (Vergeront, J. concurring), raised the question whether there was a need in Wisconsin for the known loss doctrine given "the combination of insurance contract terms, questions on the application for insurance, and the defenses available to insurers under WIS. STAT. § 631.11 . . . ."

The supreme court did not accept the petition for review in *Hydrite*, and no supreme court decision since *American Girl* has addressed the known loss doctrine. We therefore conclude that § 631.11 does not "supersede" the known loss doctrine and that the doctrine may apply whether or not the requirements of § 631.11(1)(b) and (4)(b) are met.

## CONCLUSION

¶ 37. We conclude that, based on the undisputed facts, the Oldsmobile does not come within the definition of "your insured car" in the Mercury policy. We also conclude that, based on the undisputed facts, the known loss doctrine precludes coverage of the accident under the Oldsmobile policy. Therefore, although our reasoning differs somewhat from that of the circuit court, the court correctly granted summary judgment in favor of American Family.

*By the Court.*—Judgment affirmed.